# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

ANDREW LEEDS CUSHMAN, ET AL. v. G. SLAUGHTER FITZ-HUGH, ET AL.

June 14, 1957.

Record No. 4679.

Present, All the Justices.

The opinion states the case.

*Thomas J. Michie*, for the appellants.

*Edward H. Deets, Jr.* and *Robert E. Taylor* (*Taylor & Deets*, on brief), for the appellees.

SNEAD, J., delivered the opinion of the court.

G. Slaughter Fitz-Hugh and Dorothea M. Fitz-Hugh, his wife, filed their bill against respondents Andrew Leeds Cushman, in his own right and as successor trustee under the will of Caroline A. Cushman, (sometimes called Caroline Leeds Cushman) and as executor of Moe Andrew Cushman; Walter M. Cushman, in his own right and as successor trustee under will of Caroline A. Cushman; Frances C. Chears, Caroline C. Walker, The Northern Trust Company, successor trustee under the will of Caroline A. Cushman, and Citizens Bank and Trust Company, executor of Moe Andrew Cushman, to obtain specific performance of a contract made between the Fitz-Hughs and Moe Andrew Cushman, in his own right and as trustee under the will of Caroline A. Cushman for the purchase and sale of 2.13 acres of land at Farmington in Albemarle County. The evidence was heard *ore tenus* as to one witness and stipulated as to other witnesses. The trial court decreed specific performance of the contract and we granted an appeal to respondents, Andrew Leeds Cushman, Walter M. Cushman, Frances C. Chears and Caroline C. Walker, who will hereinafter be referred to as appellants.

By deed dated January 12, 1932, Farmington, Incorporated, conveyed to Caroline Leeds Cushman, mother of appellants, 63 9/10 acres, more or less, situated in Albemarle County for a consideration

of $10,000 and the following restriction, among others, appears in the deed.

"No resubdivision of any part of this property by sale or otherwise into more than five parcels of not less than five acres each shall be made unless the consent of Farmington, Incorporated, thereto shall have been first obtained."

On August 3, 1934, Caroline Leeds Cushman conveyed this tract of land to Caroline Leeds Cushman and Moe Andrew Cushman, with rights of survivorship. They, by deed dated April 10, 1937, conveyed 8.7 acres of the tract of land to J. E. Farrar and Charlotte J. Farrar. No consent was sought or obtained from Farmington when this conveyance was made.

Caroline Leeds Cushman died in 1939, and Moe Andrew Cushman, widower, by deed dated December 2, 1940, conveyed a parcel containing 9.9 acres of the remaining tract to J. DeWitt Wilde and Bessie H. Wilde. The consent of Farmington was not sought or obtained for this transfer.

Moe Andrew Cushman, by deed dated April 10, 1943 conveyed the unsold acreage to himself as trustee under the will of Caroline Leeds Cushman, his deceased wife.

Cushman, trustee, by deed dated June 29, 1951, conveyed approximately 4.27 acres to John J. McCloskey, Jr. and Mary S. McCloskey. Farmington's consent as incorporated in the deed follows:

"It having been provided by restrictive covenant No. 4 in said deed from Farmington, Incorporated to Carolina Leeds Cushman dated January 12, 1932, hereinabove referred to, that there should be no subdivision of any part of the property, by that deed conveyed, into parcels of less than five (5) acres unless the consent of Farmington, Incorporated, thereto, shall have been first obtained, and said Farmington, Incorporated, being desirous of giving its consent to the establishment of the parcel hereby conveyed as a parcel containing less than five (5) acres, to-wit:—4.27 acres, does so indicate its consent thereto * * *."

In June, 1953, Cushman entered into a written contract with Mrs. B. E. Sims to sell her a lot containing 2.04 acres for the sum of $4,500. Mrs. Sims testified that the sale was not consummated because Cushman informed her that a mistake had been made as to a road on the property and that he desired to change the lot line, which was not acceptable to her. By mutual consent the contract of sale was rescinded. On cross examination she stated that she knew Farmington had con-

sented to the sale which consent was unconditional and without any strings attached.

An excerpt from the minutes of a meeting of the Board of Directors of Farmington, Incorporated, held on June 8, 1953 is set forth below:

"A plat of a portion of the property owned by M. A. Cushman and subject to certain restrictions incorporated in the deed from Farmington, Incorporated, to M. A. Cushman, et al. [Caroline Leeds Cushman], was presented by the Secretary with a request from M. A. Cushman that he be permitted to sell the property as shown thereon containing 2.04 acres to Mr. and Mrs. B. E. Sims. It was pointed out that restrictions incorporated in the deed from Farmington, Incorporated, to M. A. Cushman [Caroline Leeds Cushman] prohibited the sale of any part of said property in tracts of less than five acres without the approval of Farmington, Incorporated, and further that the division of the property was limited to five parcels. Inasmuch as four such tracts had already been disposed of and only one remained, the Board agreed that approval of the sale would be predicated upon acceptance by M. A. Cushman of this tract as the last he could dispose of under the provisions of the deed despite its being two acres instead of five. The Secretary was instructed to advise Mr. Cushman to that effect and, if he agreed, the Club's attorney draw up the necessary contract to be entered into by M. A. Cushman and Farmington, Incorporated, relative thereto, the same to be made a matter of record."

The record is silent as to whether the secretary of Farmington informed Cushman of the condition attached to the consent incorporated in the resolution and also whether he had knowledge from other sources.

On April 9, 1954, Cushman, in his own right and as trustee under the will of Caroline A. Cushman, entered into a written contract with G. Slaughter Fitz-Hugh and Dorothea M. Fitz-Hugh, appellees, for the sale of a lot containing 2.13 acres, which is substantially the same lot he contracted to sell Mrs. Sims. The agreed purchase price was $4,700 of which sum $500 was paid upon execution of the contract. Among other things, the agreement provided:

"It is further understood and agreed that this contract is subject to the party of the first part obtaining from Farmington, Incorporated, its consent to his selling this property containing less than five acres and, should the party of the first part be unable to obtain such con-

sent, this contract shall be null and void and all monies paid hereunder shall be refunded to the parties of the second part."

The secretary of Farmington informed David J. Wood, Jr., counsel for Cushman, that in his opinion the resolution consenting to the sale to Mrs. Sims was sufficient authority for the officers to execute the deed to appellees and he verbally assured Wood that Farmington would consent to the conveyance. Thereupon Wood prepared a deed of bargain and sale and dated it May 7, 1954, which was to be the closing date. But Cushman departed this life on May 6, 1954 before executing the deed. According to minutes of a meeting held by Farmington on February 14, 1955, it acted formally on the transfer at its meeting on June 7, 1954, at which time consent was given provided appellants enter into a contract with Farmington "accepting the right of way to said property as the last of five to which the property was entitled." This condition was not acceptable to appellants, the Cushman heirs, and they refused to convey the property to appellees. Hence suit was instituted on August 25, 1954 for specific performance of the contract.

Negotiations continued between Farmington and appellants after suit was brought, but Farmington was unwilling to delete or alter the condition. However, Farmington did express approval of a plat submitted to it to subdivide 21.47 acres of the land into four tracts with "rights-of-way" over Farmington roads provided appellants paid the sum of $20,000 cash.

There was evidence of two experienced real estate appraisers to the effect that the lot of 2.13 acres was desirable, well located and unique. Its then value was estimated to be between $8,000 and $10,000.

Another deed, dated April 24, 1956, was drawn, the cover of which bears the firm name of appellees' counsel. In it, Farmington consented to the conveyance, but it was provided "the parties of the first part accept the conveyance as the fourth conveyance off under the restriction in item (4) of said deed to Caroline Leeds Cushman." It was executed by Farmington on May 24, 1956, but was not executed by any of the appellants.

The question presented for our determination is whether Farmington consented to the sale of the lot in the manner contemplated by the parties to the contract of April 9, 1954. If it did, then appellees were entitled to a decree requiring appellants to specifically perform. On the other hand, if Farmington is asking for something of substantial

value in return for its consent, then such consent is not given as contemplated by the parties to the contract and specific performance of the contract should be denied.

Appellants say that the restrictive covenant contained in the deed from Farmington to Caroline Leeds Cushman is ambiguous in two respects. First, it does not prohibit the subdivision of the tract into a number of parcels of less than 5 acres each. It is conceded, however, that this alleged ambiguity has been so construed by the parties as to prohibit any subdivision of the tract into parcels of less than 5 acres without the consent of Farmington and hence they do not rely upon this alleged ambiguity. They do contend, however, that when Farmington consents to a conveyance of less than 5 acres, there is an ambiguity as to whether the owner has the right to subdivide the remaining tract into five parcels of not less than 5 acres each without the consent of Farmington, or whether the conveyance of less than 5 acres should be counted as one of the five parcels of not less than 5 acres into which the owner was entitled to subdivide the tract without the consent of Farmington. They insist that the covenant is silent as to what is the effect of a consent to the transfer of a parcel of less than 5 acres and that such ambiguity has not been determined or settled by action of the parties.

Appellees conceded in their oral argument before us that if an ambiguity does exist in the contract, then specific performance will not lie, but they deny any such ambiguity exists. They maintain that there is only one logical interpretation of the covenant in question and that is Farmington's consent to a transfer must be secured if the owner desires to subdivide the tract into more than a total of five parcels, or if he desires to create or convey any parcel of less than 5 acres.

When Farmington consented to the conveyance of 4.27 acres to the McCloskeys, no reference was made in the deed to the effect that it was to be considered as the third conveyance off under the restrictive covenant. But its consent to the transfer of the lot in question to appellees is conditioned that appellants accept this conveyance as the fourth conveyance off under the restrictive covenant. A substantially similar condition was contained in Farmington's resolution consenting to the sale to Mrs. Sims, which was not consummated. Yet, as has been said, the record is silent as to whether Cushman knew that the condition was a part of the consent.

Appellants argue that because of Farmington's insistence that the condition be incorporated in the deed, it recognized that the meaning

of the covenant is doubtful and desires to have its interpretation finally adopted, rather than appellants' view that when Farmington consents to a transfer of less than 5 acres, the conveyance should not be counted as one of five parcels of not less than 5 acres into which the owner could subdivide the tract without the consent of Farmington.

Appellants contend further that if they execute the deed to appellees, acknowledging this to be the last of the rights of subdivision to which they are entitled, they are then forbearing to institute suit and are giving something of substantial value in order to secure Farmington's consent.

■ There can be no specific performance of a contract which is subject to a condition unless the condition has been fulfilled.

It is stated in Fry on Specific Performance of Contracts, New Ed., § 654, p. 386:

"A contract may be originally conditional, and contingent upon the performance of some act or the happening of some event. Where that has occurred, the contract becomes absolute, and rests on the same footing for all purposes as if it had been originally made positively and without reference to any contingency. But until it has thus become absolute, no person can be entitled to call for its performance. Where, therefore, the contract is in its original conditional, it may afford a ground of defense that the condition has not been performed." See also Pomeroy's Specific Performance of Contracts, Third Ed., § 334, p. 731.

The general principles which govern the application of specific performance have been stated time and again in this State. It is not an absolute right, but rests in the sound discretion of the court. The granting or refusing of relief is according to the circumstances of each case. *Griscom* v. *Childress*, 183 Va. 42, 47, 31 S. E. 2d 309; *Christianson* v. *Brosius*, 184 Va. 958, 963, 37 S. E. 2d 50; *Bond* v. *Crawford*, 193 Va. 437, 444, 69 S. E. 2d 470; *Lucy* v. *Zehmer*, 196 Va. 493, 504, 84 S. E. 2d 516.

In *Clay* v. *Landreth*, 187 Va. 169, 177, 45 S. E. 2d 875, we said:

"Of course, if a contract is certain and unambiguous, based upon a valuable consideration, free from fraud or mistake, not unconscionable, and its performance will not result in oppression upon the defendant, as a matter of course it will be specifically performed in equity; but on the other hand, if the circumstances and conditions have been so changed since its execution as to impose a loss and in-

justice upon an innocent defendant, a court of equity ordinarily will not enforce it regardless of the plaintiff's freedom from fault."

■ In *Hooff* v. *Paine*, 172 Va. 481, 485, 2 S. E. 2d 313, we discussed the question of forbearance and we stated:

"The law is well settled that forbearance, or the promise of forbearance, to prosecute a well-founded or doubtful claim is a sufficient consideration for a contract. On the other hand, the forbearance to prosecute an invalid, worthless or unfounded claim is not a consideration recognized by the law as valuable. 12 Am. Jur., Contracts, section 84, section 85, section 86 and section 87; 8 Cor. Jur., Bills and Notes, section 373; Elliott on Contracts, Vol. 1, section 235; *City Street Improvement Company* v. *F. E. Pearson*, 181 Cal. 640, 185 P. 962, 20 A. L. R. 1317.

"In 13 Cor. Jur., 'Contracts,' section 197, is found this very lucid statement of the general rule: 'The principle followed in perhaps the majority of cases is that one has a right to sue where his claim is reasonably doubtful, and that forbearance to enforce a claim which might reasonably be thought doubtful is a sufficient consideration, on the ground that "the reality of the claim which is given up must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concessions." From this it is clear that, if the right is not doubtful, there is no consideration, for there is neither benefit to the promisor nor detriment to the promisee, and, therefore, forbearance or a promise to forbear to insist on a claim clearly unenforceable cannot be a consideration. This is true, for example, of a promise to forbear from claims under an illegal contract, such as a gambling contract, or one involving the commission of a crime, or one which is without consideration, or which is barred by the statute of limitations; or of the discontinuance of a vexatious lawsuit brought to harass the attorneys of an infant who have obtained a final judgment against a railroad company, and to delay the collection thereof.' "

[■ In the case at bar, the enforcement of the contract of sale depended upon a condition subsequent and that condition was the obtaining of Farmington's consent to the transfer. Farmington consented, but did not consent in the manner contemplated by the parties to the contract. Its consent was predicated upon a condition that appellants agree that the conveyance to appellees would be the last conveyance that could be made from the tract, leaving the residue of

the tract to be conveyed only as a unit. In so doing Farmington was demanding of appellants that they relinquish and forbear the prosecution of their claim, something of substantial value, in return for its consent, which appellants were not required to surrender.

Farmington is not a party to this suit and we are not called upon, nor would it be proper now to determine the exact meaning of the covenant contained in the deed from Farmington to Caroline Leeds Cushman.

The decree appealed from will be reversed and the cause remanded to the trial court for the entry of a decree not in conflict with the views herein expressed.

*Reversed and remanded.*