# Richmond

Robert Monroe Jordan v. Commonwealth of Virginia.

June 11, 1976.

Record No. 750965.

Present, All the Justices.

*F. H. Conway*, for plaintiff in error.

*Linwood T. Wells, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

Robert Monroe Jordan was tried by a jury and found guilty of burglary. His punishment was fixed at 10 years confinement in the penitentiary, and judgment was entered by the court.

Defendant was arrested on a warrant which charged that on October 27, 1974, he "1. did unlawfully and feloniously break and enter the property of Mrs. Mastin Collie with the intent to commit larceny therein, and with the use of a dangerous weapon, in violation of section 18.1-89 of the 1950 Code of Va. as amended. 2. did unlawfully and feloniously rob Mrs. Mastin Collie by violence or putting her in fear by threatening in violation of section 18.1-91 of the 1950 Code of Va. as amended."

The evidence shows that, on November 12, 1974, during defendant's preliminary hearing, his counsel entered into a plea bargain with the assistant Commonwealth's Attorney who was conducting the prosecution.

The assistant Commonwealth's Attorney testified that he and the defense attorney agreed and that "he [the defense attorney] more or less did what I wanted". He further said that the bargain was: "Well, what we decided—that he would be found guilty on a misdemeanor, given 12 months in jail, that he would spend 8 of those months in jail and that the other charges—the whole warrant would be amended to assault and battery."

The agreement was communicated to the judge of the general district court, who amended the warrant to read that the defendant, on October 27, 1974, "did unlawfully assault and batter Mrs. Mastin Collie. . .". The district judge then noted on the face of the warrant that defendant, on his plea of guilty, had been found guilty of assault and battery and sentenced to serve 12 months in jail with 4 months suspended.

Thereafter, and apparently following some public criticism of the manner in which the case had been concluded, the Commonwealth's Attorney submitted to the grand jury an indictment charging that defendant on October 27, 1974, did unlawfully and feloniously break and enter in the nighttime the dwelling house of Mrs. Mastin Collie, with intent to commit larceny or other felony therein. Code § 18.1-86. Defendant moved to quash the indictment upon the grounds of double jeopardy, *res judicata* and estoppel. The court overruled these various pleas, being of opinion that defendant had not been placed in jeopardy by virtue of any action taken at the preliminary hearing, and further that the Commonwealth had a right to refuse to carry out the plea bargain in question. The trial resulted in the conviction under review, and we granted the defendant a writ of error.

We need only consider the defendant's assignment of error on the effect of the plea bargaining for it is the dispositive issue.

It is clear from their testimony that at the conclusion of the preliminary hearing on November 19, 1974, defendant Jordan, his counsel, the assistant Commonwealth's Attorney and the district judge were all of opinion that the charges encompassed by the arrest warrant had been disposed of by the defendant's plea of guilty to a charge of assault and battery. It is equally clear that the warrant, as originally prepared and served on Jordan, properly charged the defendant with having committed two felonies, statutory burglary

and robbery; and that, in return for defendant's plea of guilty, the felony charges were stricken by the district court judge and the warrant amended to charge only assault and battery, a misdemeanor.

While it may be argued that the actions of the prosecutor in striking a plea bargain, and the district court in agreeing thereto, were ill-advised, the legality of the trial of the defendant for assault and battery cannot be successfully questioned. Virginia Code § 19.1-106 (1974 Cum. Supp.)[1] provided:

> "**When accused to be discharged, tried, committed or bailed by judge.**—The judge shall discharge the accused if he consider that there is not sufficient cause for charging him with the offense.
>
> "If a judge consider that there is sufficient cause only to charge the accused with an offense which the judge has jurisdiction to try, then he shall try the accused for such offense and convict him if he deem him guilty and pass judgment upon him in accordance with law just as if the accused had first been brought before him on a warrant charging him with such offense.
>
> "If a judge consider that there is sufficient cause to charge the accused with an offense that he does not have jurisdiction to try then he shall commit him to jail or let him to bail under § 19.1-109.2. . . ."

Unlike *Rouzie and Boudreau* v. *Commonwealth*, 215 Va. 174, 207 S. E. 2d 854 (1974), *Burford* v. *Commonwealth*, 179 Va. 752, 20 S. E. 2d 509 (1942), and *Murphy* v. *Commonwealth*, 64 Va. (23 Gratt.) 960 (1873), the narrow issue before us here is whether the Commonwealth of Virginia shall be held to abide by the terms of a promise made to the defendant. As Mr. Justice Frankfurter said in his concurring opinion in *Sherman* v. *United States*, 356 U. S. 369, 380 (1958), "Public confidence in the fair and honorable administration of justice, upon which ultimately depends the rule of law, is the transcending value at stake." The word of the Commonwealth of Virginia has been given in this case, and it cannot be abridged, revoked or diluted. The integrity of the Commonwealth itself must be upheld.

In *Johnson* v. *Commonwealth*, 214 Va. 515, 518, 201 S. E. 2d 594, 596, (1974), there was a noncompliance with a plea bargaining agreement by a prosecutor. We held:

> "It is of the utmost importance that the integrity of the plea bargaining process be assured because any failure in this regard

[1] Now Code § 19.2-186.

would result in making this most desirable process less useful and productive than in the past.

"Here a plea bargain agreement was made and defendant, who had complied with the agreement, was entitled to have the agreement strictly complied with by the prosecutor until the sentencing process was completed. Any deviation from the agreement by the prosecutor, whether inadvertent or not, should not have been countenanced. Here the defendant promptly elected to withdraw his guilty plea entered pursuant to the agreement and he should have been permitted to do so. [footnote omitted]"

In *Santobello v. New York*, 404 U. S. 257, 261-62 (1971), Mr. Chief Justice Burger said:

"The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known. There is, of course, no absolute right to have a guilty plea accepted. [Citations omitted] A court may reject a plea in exercise of sound judicial discretion.

"This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

In *United States v. Carter*, 454 F. 2d 426 (4th Cir. 1972), the court held that if the government made a promise to defendant, as was alleged, and the defendant relied upon it in incriminating himself and others, the government should be held to abide by its terms. In its opinion the court said:

"There is more at stake than just the liberty of this defendant. At stake is the honor of the government, public confidence in the fair administration of justice, and the efficient administration of justice in a federal scheme of government." 454 F. 2d at 428.

*See also United States v. Paiva*, 294 F. Supp. 742 (D. D. C. 1969).

In the instant case the conclusion is inescapable that the defendant and his counsel "bargained" for a plea of guilty to assault and battery in exchange for a reasonably light sentence and a dismissal of

the more serious charges of statutory burglary and robbery. Defendant's willingness to agree to this bargain is understandable when it is considered that a jury subsequently found him guilty of burglary and thought the offense serious enough to justify his confinement in the penitentiary for ten years. It appears that at the preliminary hearing the victim of the crimes (Mrs. Mastin Collie) was unable to identify the defendant. This, together with the fact that the defendant's confession, made to the officers the morning he was arrested, was under attack, may have influenced the prosecutor in agreeing to the plea bargain. These considerations may also have influenced the court in agreeing to the arrangement.

In any event, the district court had the authority under Code § 19.1-106 to consider that there was sufficient cause only to charge Jordan with an offense (assault and battery) which the court had jurisdiction to try, to find him guilty and to pass judgment on him. This was done and no appeal was noted to the conviction and sentence by the district court. That conviction is final and is not before us.

In *Santobello* the Court found that the interests of justice would best be served by remanding the case to the state court for further consideration. The Court held that the state court was in a better position to decide whether the circumstances of the case required only that there be specific performance of the agreement on the plea, or whether they required that the relief sought by the petitioner, the opportunity to withdraw his plea of guilty, be granted.

In *Johnson* the defendant sought to withdraw his guilty plea, entered pursuant to a plea bargaining agreement, and we held he should have been permitted to do so. The case was remanded with direction that the trial court restore the indictment to its original form.

In *Carter* the court vacated the defendant's conviction, remanded for an evidentiary determination, and directed that "If the promise was made, relied upon and breached as alleged, the indictment should be dismissed." 454 F. 2d at 428.

In *Paiva* the court found that there had been a plea bargaining agreement; that the defendant had performed on his part; and that the government had violated its side of the agreement. It therefore directed that the indictment be dismissed. 294 F. Supp. at 748.

In the case under review, we are powerless to restore the parties to the position they occupied at the time of the preliminary hearing.[2]

---

[2] The Attorney General is not unaware of the difficulty we face in the instant

Following the plea bargain, Jordan entered a plea of guilty to assault and battery. By so doing he admitted his presence at the scene of the burglary and robbery and admitted, although to a lesser degree, his involvement. This action very effectively frustrated any defense that he might have interposed to the warrant or any subsequent indictments for offenses embraced within the warrant. Further, the defendant accepted the judgment of the district court and served the term of imprisonment imposed upon him. He has fully performed his part of the agreement, and no order that we can enter will undo that performance, or restore to him the status he occupied on the day of his preliminary hearing.

Under these circumstances we find no alternative to decreeing specific performance by the Commonwealth of its plea bargaining agreement with the defendant.

In *Johnson, supra,* we said:

"In Virginia, as well as in our sister states, the system of criminal justice cannot function promptly and effectively unless the vast majority of all criminal cases are disposed of on pleas of guilty. [footnote omitted] Plea bargaining, when properly pursued, is a legitimate means of arriving at a plea of guilty, but it is a practice which should not be abused. *Hobson v. Youell,* 177 Va. 906, 15 S.E.2d 76 (1941).

"Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. *Santobello* v.

case in fashioning appropriate relief. In his brief we find the following paragraph:
"However, difficulty lies in the fact that this Court, if it reversed Defendant's conviction, would be faced with the fact that Defendant has already been convicted in the General District Court of assault and battery and that there is no way it can nullify the conviction in the General District Court since that conviction is not on appeal and therefore not before the Court. If this Court is powerless to nullify the conviction in the General District Court, as would appear as the case, *Rouzie and Boudreau, supra,* no solution seems to exist except to grant the relief Defendant requests, specific performance of the plea bargain, that is, reversal of his conviction."

*New York*, 404 U.S. 257, 261 (1971)." 214 Va. at 517-18, 201 S.E.2d at 596.

We would observe that if there be apprehension that a Commonwealth's Attorney may unreasonably bargain away the state's right and duty to prosecute, or that, pursuant to Code § 19.2-186, courts not of record may improperly dispose of serious felony charges by reducing them to misdemeanors, then the remedy lies with the General Assembly of Virginia.

For the reasons hereinbefore set forth, the indictment in this case will be dismissed.

*Reversed and dismissed.*