Richmond

## Betty M. Holler

v.

## Commonwealth of Virginia

April 18, 1980.

Record No. 791168.

Present: All the Justices.

*Jason D. Smolen (Smolen, Plevy & Palkovitz,* on brief), for appellant.

*Robert H. Anderson, III, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

This is a companion case to *Clark* v. *Commonwealth,* 220 Va. 201, 257 S.E.2d 784 (1979), *cert. denied,* 444 U.S. 1049 (1980). Betty M. Holler was initially indicted for the murder for hire death of George Harold Scarborough. Because of her cooperation with the Commonwealth in its prosecution of James T. Clark, Jr., and Charles Daniel Stewart, also charged in the case, the Commonwealth was permitted to amend the indictment against Holler to a charge of first degree murder. The defendant entered a plea of guilty and was sentenced to life in the penitentiary. Thereafter Holler sought unsuccessfully to withdraw her guilty plea and noted this appeal.

Betty M. Holler is the person who procured Charles Daniel Stewart and James T. Clark, Jr., to murder George Harold Scarborough for the sum of $7,000. Upon her arrest, Holler confessed her role in the homicide and implicated Stewart, Clark, and Scarborough's wife. For their part in this felonious and premeditated killing, Clark received the death sentence and Stewart was sentenced to imprisonment for life.[1] The wife was acquitted.

Upon her arraignment for first degree murder, the court below was advised that the defendant wished to submit a plea of guilty, and was tendered a "plea of guilty to a felony form," which had been executed by Holler, her counsel, and the Commonwealth's Attorney. Rule of Court 3A:11(d)(2). The form provided, in part, as follows:

7. It is my understanding that at sentencing the Commonwealth's Attorney will recommend that I be sentenced to serve 25 years.

8. I understand the court may accept or reject the recommendation, and may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the pre-sentence report and other evidence.

The defendant was then subjected to a most comprehensive and searching examination by the court to determine if the defendant understood the full import of a plea of guilty and of the form that she had executed. This examination by the court and the responses by the defendant revealed that Holler had a twelfth grade education; that she understood the form and had consulted her counsel before signing it; that she appreciated the fact that she was charged with willful and premeditated murder as an accessory before the fact; that she understood the elements of the charge and that it was a felony; that her plea was made freely and voluntarily because she was in fact guilty of the crime charged; that she understood what a trial by jury was and that she was entitled to such a trial; that after consultation with her counsel she had decided that she did not want a jury trial; and that no one connected with the State of Virginia, or the prosecution, had in any manner threatened her or forced her to enter a plea of guilty. The court, referring specifically to the form signed by the defendant, observed that it provided "that at sentencing the Commonwealth Attorney will recommend that you be sentenced to serve 25 years." This

---

[1] Stewart's petition for a writ of error was denied, and the judgment of the lower court was affirmed. *Stewart* v. *Commonwealth,* 219 Va. cxxv (1979).

was followed by the following exchange between the court and the defendant:

Q. Now, other than that statement, has anybody led you to believe that you can expect leniency for any reason from this Court?
A. No, sir.
Q. Do you understand that imposing punishment, the limits of punishment for this crime are a maximum of life imprisonment and a minimum of 20 years?
A. Yes, sir.
Q. Do you understand that that statement made in paragraph number 7 is only a recommendation?
A. Yes, sir.
Q. Do you understand that I am not bound by that recommendation in any way?
A. Yes, sir.
Q. I may reject it in total. Do you understand that?
A. Yes, sir.
Q. And I can sentence you from 20 years to a maximum of life imprisonment. Do you realize all those things?
A. Yes, sir.

The court asked counsel for defendant if they had discussed with Holler the plea agreement, the waiver of the right to trial by jury, and the opportunity to plead not guilty and to have a trial by jury. They assured the court that they had and that they were satisfied that she understood. Counsel for the defendant additionally stated to the court:

MR. SMOLEN: Your Honor, I just want to state something for the record. The defense is not acquiescent to the recommendation in paragraph 7.
THE COURT: What do you mean by that, Mr. Smolen?
MR. SMOLEN: What we are stating is that through the discussions with the Commonwealth's Attorney, it is my understanding that his recommendation will be that of 21 years or no more.
THE COURT: 25.
MR. SMOLEN: 25 years and no more. We do plan to go forward and ask for a presentence report at the conclusion of the hearing if the plea is accepted and reserve our rights to have mitigating circumstances.
THE COURT: You certainly have the right to present evidence in mitigation of the circumstances as long as Mrs. Holler under-

stands that that is merely a right to present that evidence and that 25 years is not the maximum with which we are dealing. We are dealing with life imprisonment as the maximum.

MR. SMOLEN: We understand that, your Honor.

At the conclusion of the hearing, the trial court made the following statement to Mrs. Holler:

Mrs. Holler, I am of the opinion that this plea of guilty and your waiver of the Jury trial have been made by you voluntarily; that you understand the nature of the charges against you and the consequences of tendering a plea of this sort. I believe based upon the evidence which has been presented and upon your plea, that you are guilty as charged. Therefore I accept your plea of guilty and I will enter it as a matter of record in this case.

Counsel for the defendant then moved for a presentence report, which motion was granted. Two months later, on February 6, 1977, the defendant appeared for sentencing. At the outset of the hearing, the trial court addressed the following statement to the defendant: "Mrs. Holler, before we begin this proceeding, I would like to ask you, having recalled the prior proceeding and the presentence report, whether you have reason at this time to withdraw your plea of guilty on this charge?" Holler responded: "No, sir." The court then asked counsel for defendant if they concurred in the fact that the "plea of guilty stands," to which they responded: "We do, sir."

In his argument prior to sentencing, defendant's counsel recognized that the question was solely one of punishment, observing: "Only you, your Honor, is going to have to select the punishment for the term that she must serve. . . . The Court knows full well the recommendation that Mr. Horan [Commonwealth's Attorney] has made in this case. . . ."

The Commonwealth's Attorney, in his closing argument, said that in return for Holler's cooperation in the *Clark* and *Stewart* cases, he had agreed to recommend a reduction of the capital murder charge against her to first degree murder, and that he would recommend to the court that her punishment be twenty-five years in the penitentiary, which recommendation he made. The trial court acknowledged the recommendation of the Commonwealth's Attorney and said that, in light of the magnitude of the crime and the punishments meted out to Clark and Stewart, in its judgment the defendant should be sentenced to life imprisonment, and so ordered.

On February 22, 1979, the defendant, by counsel, notified the Commonwealth's Attorney that she would move the trial court to withdraw her plea of guilty, assigning as a ground for the motion "[t]hat on February 6, 1979, the court rejected the plea agreement without first affording the defendant the opportunity to withdraw her plea of guilty," which she alleged she was entitled to do under the Rules of this court. The court below denied the motion by order entered April 6, 1979, and this appeal ensued.

▉▉▉ The defendant relies upon Rule 3A:11(d)(4) of this court, which reads as follows:

> (d) *Plea Agreement Procedure.*
> (4) If the court rejects the plea agreement, the Court shall inform the parties of this fact, and advise the defendant personally in open court or, on a showing of good cause, in camera, that the court will not accept the plea agreement. Thereupon, neither party shall be bound by the plea agreement. The court shall afford the defendant the opportunity to withdraw his plea of guilty or plea of nolo contendere and advise the defendant that, if he persists in his plea, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

Defendant does not deny that she was fully advised and understood that the court might decline to accept the plea agreement. However, she interprets the Rule to rigidly require a court to affirmatively advise a defendant if it does not find a plea agreement acceptable, and then to afford a defendant an opportunity to withdraw the plea. Important to our decision is Section 1 of Rule 3A:11(d), which reads, in pertinent part, as follows:

> (1) The attorney for the Commonwealth and the attorney for the defendant...may engage in discussions with a view toward reaching an agreement that, upon entry by the defendant of a plea of guilty, ... to a charged offense, ... the attorney for the Commonwealth will do any of the following:
> (A) Move for dismissal of other charges;
> (B) Make a recommendation for a particular sentence;
> (C) Agree not to oppose the defendant's request for a particular sentence; or
> (D) Agree that a specific sentence is the appropriate disposition of the case.

In the instant case the Commonwealth's Attorney did not agree with defendant and her counsel "that a specific sentence is the appropriate disposition of the case." On the contrary, what the Commonwealth's Attorney agreed to was to "[m]ake a recommendation for a particular sentence." The parties went to great lengths to remove any ambiguity from the "plea of guilty to a felony form" that was signed by the defendant. The first line of paragraph 7 of the form originally contained the printed language "[t]he following plea agreement is submitted." This language was deliberately stricken and the paragraph amended and signed as heretofore set forth. Paragraph 8 originally read: "I understand the Court may accept or reject the agreement." The paragraph was amended by striking out the word "agreement" and inserting the word "recommendation."

We think it clear that all parties understood exactly what the Commonwealth's Attorney agreed to do and that was to amend the indictment, reducing the charge from capital to first degree murder, and to recommend to the court that defendant's punishment be twenty-five years. The defendant was fully advised of the import of the agreement and that the court would not be bound thereby but would exercise its independent judgment. The defendant was afforded every opportunity to withdraw her plea of guilty after being so advised, both on the day the plea was tendered, and on the day the sentencing occurred. No objection was ever voiced by the defendant and no effort was made to withdraw her plea of guilty until some sixteen days after sentencing. Such conduct on the part of the defendant is wholly inconsistent with a belief on her part that she could withdraw her plea of guilty if she received any sentence in excess of twenty-five years. A plea bargaining agreement cannot be used as a vehicle "to test the weight of potential punishment." *United States* v. *McGahey,* 449 F.2d 738, 739 (9th Cir. 1971), *cert. denied,* 405 U.S. 977 (1972), quoting from *Kadwell* v. *United States,* 315 F.2d 667, 670 (9th Cir. 1963).

While Rule 3A:11(d) was not applicable when *Lilly* v. *Commonwealth,* 218 Va. 960, 963, 243 S.E.2d 208, 210 (1978), was decided, we took occasion there to observe that even if applicable the Rule "would confer only a pre-sentence right to withdraw a guilty plea" and that if a postsentence situation developed, it would involve judicial discretion. The applicable standard would be that enunciated in Rule 3A:25(d), which reads: "[T]o correct manifest injustice, the court within 21 days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea." Indeed, even had there been an agreement for the imposition

of a specific sentence of twenty-five years, which was not the case, we would have to decide whether, in the exercise of sound judicial discretion, the trial court should have granted the motion for withdrawal of the guilty plea "to correct some manifest injustice resulting from the circumstances concerning the plea agreement and the recommendation of the Commonwealth's Attorney." *Id.* at 963, 243 S.E.2d at 210-11. We have no hesitancy, upon the whole record before us, in holding that the defendant and her counsel were fairly warned and otherwise made aware that the court was not bound to follow the recommendation of the Commonwealth's Attorney. Rejection of the recommendation does not amount to a rejection of the plea agreement as contemplated under Rule 3A:11(d)(4). Here, the agreement was accepted, the recommendation was not.

█ In *Santobello* v. *New York,* 404 U.S. 257 (1971), Mr. Chief Justice Burger pointed out that a plea must be voluntarily and knowingly made and, if induced by promises, the essence of those promises must in some way be made known. He further observed, referring to the safeguards necessary to insure the defendant what is reasonably due in the circumstances, that "[t]hose circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. In *W. A. Jones* v. *Commonwealth,* 217 Va. 248, 227 S.E.2d 701 (1976), *Jordan* v. *Commonwealth,* 217 Va. 57, 225 S.E.2d 661 (1976), and *Johnson* v. *Commonwealth,* 214 Va. 515, 201 S.E.2d 594 (1974), we reversed because in each case there was a noncompliance with a plea bargaining agreement. In *Lilly, supra,* where the defendant waited until after his sentence had been imposed to move to withdraw his guilty plea and did not complain of any failure of the trial court to warn him that he was not bound by the plea agreement or the recommendation of the Commonwealth's Attorney, we affirmed the conviction.

█ Rule 3A:11(d)(4) is virtually identical to Fed. R. Crim. P. 11(e). Additionally, Fed. R. Crim. P. 11(e)(3) and (4), dealing with the acceptance and rejection of a plea agreement, respectively, are substantially identical to Rule 3A:11(d)(3) and (4). Typical of the construction accorded Fed. R. Crim. P. 11(e) by federal courts is the Fourth Circuit case of *United States* v. *Savage,* 561 F.2d 554 (4th Cir. 1977). There, the court considered whether a defendant should have been allowed to withdraw his guilty plea after receiving a heavier sentence than that recommended by the district attorney. The defendant argued that the trial judge had rejected the plea agree-

ment, thereby permitting him the privilege of withdrawing his plea if he so desired. The court, after noting that the plea agreement between the government and the defendant had not been breached and that the defendant knew of the nonbinding effect of the sentence recommendation, held:

> We now hold that *where a defendant plea bargains only for a recommendation by the government,* which the defendant knows is not binding on the trial court, and the government complies with the agreement by making the recommendation, nonacceptance of the recommendation by the trial court is not a rejection of the plea agreement under Rule 11(e)(4).

561 F.2d at 556. (Emphasis added.)

In *United States* v. *Gaertner,* 593 F.2d 775 (7th Cir. 1979), the court held that the failure of the trial court to follow the recommendation made by the prosecution did not constitute a rejection of the plea agreement within the meaning of the federal rule, and said:

> Appellant's contentions are predicated upon an incorrect application of Rule 11(e)(4) to the plea agreement in this case. With respect to sentencing, the terms of the plea agreement provided that the government would submit only a *recommendation* for a concurrent sentence in the tax case, with the express understanding that the recommendation would not be binding upon the court. The court's refusal to adopt the government's sentencing recommendation is simply not a rejection of the plea agreement, since by its very terms the court was not bound by the recommendation, and the court so admonished the appellant on the record. . . .
> Therefore, we hold that the district court's nonacceptance of the government's sentence recommendation did not constitute a rejection of the plea agreement under Rule 11(e)(4), where the appellant plea bargained merely for a sentence recommendation, rather than disposition, knew that the recommendation would not be binding upon the trial court, and the government presented the recommendation in accordance with the plea agreement.

593 F.2d at 777. *See also United States* v. *Boniface,* 601 F.2d 390 (9th Cir. 1979); *United States* v. *Henderson,* 565 F.2d 1119 (9th

Cir. 1977), *cert. denied,* 435 U.S. 955 (1978); *Neeley v. Duckworth,* 473 F.Supp. 288 (N.D. Ind. 1979); *Massie v. Blankenship,* 469 F.Supp. 686 (E.D. Va. 1979); *United States v. Sarubbi,* 416 F.Supp. 633 (D.N.J. 1976).

In the instant case the Commonwealth's Attorney fulfilled in every particular the agreement that he had with the defendant and her counsel. The record shows conclusively that the plea of guilty entered by the defendant was knowingly and intelligently made, with the full knowledge that the court might not accept and follow the recommendation of the Commonwealth's Attorney as to the punishment she should receive. Defendant's plea was entered after the trial court had carefully explained to her the nature of the charge against her, the range of penalties for first degree murder, and the fact that the court could sentence her to life imprisonment.

We find no violation of Rule 3A:11(d), or abuse of discretion by the trial court in its action denying defendant's motion to withdraw her plea of guilty. Accordingly, the judgment of the lower court is

*Affirmed.*