Tuesday          24th

February, 1998.


Christopher Sandy, s/k/a
 Christopher E. Sandy,                                    Appellant,

 against          Record No. 2458-95-2
                  Circuit Court Nos. 95-30 and 95-42 through
                                     95-47

Commonwealth of Virginia,                                Appellee.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick,[*] Judges Baker, Benton, Coleman,
          Moon,[**] Willis, Elder, Annunziata and Overton

          Gordon A. Wilkins (Wilkins & Davison, on
          brief), for appellant.

          Thomas D. Bagwell, Senior Assistant Attorney
          General (Richard Cullen, Attorney General,
          on briefs), for appellee.


On June 10, 1997, a panel of this Court held that the
Commonwealth had breached the terms of a plea agreement on which the
defendant had relied to his detriment by "fully answer[ing] any
questions which were posed to him by [the Commonwealth's Attorney]."
See Sandy v. Commonwealth, 25 Va. App. 1, 486 S.E.2d 102 (1997).
Based on that holding, the panel reversed the defendant's seven felony
convictions and remanded the case to the trial court, with
instructions requiring the Commonwealth to specifically perform its
promises in the plea agreement, which were to move to amend certain

_____

[*]On November 19, 1997, Judge Fitzpatrick succeeded Judge Moon as
chief judge.

[**]Chief Judge Moon retired from the Court prior to the rendition
and release of this order and did not participate in the decision.

charges, drop others, and recommend sentences on the amended charges. We granted a rehearing en banc from the panel's decision and stayed the mandate. Upon rehearing en banc, the stay of this Court's June 10, 1997 mandate is lifted and we reverse the trial court for the reasons set forth in the panel decision, which we adopt, see id., and we vacate the conviction orders and remand the case to the trial court.

To the extent the panel opinion may not have explicitly set forth the procedure for the trial court to follow on remand, we provide the following direction: On remand, the Commonwealth's Attorney shall make a good faith motion in accordance with the terms of the plea agreement to amend seven of the thirty-two felony charges to petit larceny, to dismiss or nolle prosequi the remaining charges, and, subject to the trial judge's acceptance of the Commonwealth's motions and the defendant's election to plead guilty thereto, to recommend fines of no more than $500 and concurrent six-month jail terms for each petit larceny conviction. On remand, a trial judge other than the judge who previously heard the case and held the agreement to be "invalid" shall be designated to consider whether to accept or reject the Commonwealth's motions, unless the parties agree otherwise. See Rule 3A:8(c)(4).

"There is, of course, no absolute right to have a guilty plea accepted. A court may reject a plea in the exercise of sound judicial discretion." Santobello v. New York, 404 U.S. 257, 262 (1971). See Sandy, 25 Va. App. at 12 n.2, 486 S.E.2d at 108 n.2; Rule 3A:8(c)(2); Holler v. Commonwealth, 220 Va. 961, 968, 265 S.E.2d 715, 719 (1980). If, on remand, the trial court conditionally accepts the

Commonwealth's Attorney's recommendations to amend and <u>nolle</u> <u>prosequi</u> the various charges, the defendant shall be arraigned and afforded the opportunity to plead thereto, with the defendant being informed that the trial court is not required to accept the Commonwealth's recommendation for $500 fines and concurrent six-month jail sentences. <u>See</u> Rule 3A:8(c)(1)(B). In the event the trial court rejects the Commonwealth's Attorney's motions to amend and <u>nolle</u> <u>prosequi</u> the charges pursuant to the plea agreement or the defendant elects to plead not guilty, the Commonwealth shall retry the defendant, if it be so advised, and shall do so before a judge other than the one who may have rejected the plea agreement, unless the parties agree otherwise as provided by Rule 3A:8(c).

Chief Judge Fitzpatrick and Judge Baker dissent from the majority holding and would affirm the trial court's ruling that on the record "there was no agreement between the Commonwealth and the defendant that should be enforced."

This order shall be published and certified to the trial court.

A Copy,

Teste:

Clerk

Present: Judges Coleman, Elder and Senior Judge Cole
Argued at Richmond, Virginia


CHRISTOPHER SANDY, S/K/A
 CHRISTOPHER E. SANDY
                                        OPINION BY
v.    Record No. 2458-95-2          JUDGE MARVIN F. COLE
                                         JUNE 10, 1997
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF WESTMORELAND COUNTY
             Joseph E. Spruill, Jr., Judge

        Gordon A. Wilkins (Wilkins & Davison, on
        brief), for appellant.

        Eugene Murphy, Assistant Attorney General
        (James S. Gilmore, III, Attorney General;
        Thomas D. Bagwell, Senior Assistant Attorney
        General, on brief), for appellee.


     Christopher Sandy (defendant) was indicted on thirty-two
charges of issuing fraudulent grain receipts in violation of Code
§ 3.1-722.28.  Defendant entered into a plea agreement with the
Commonwealth's Attorney.  The trial court declared the plea
agreement invalid.  On appeal, the defendant contends (1) a
contractual relationship existed between the Commonwealth and the
defendant; (2) the Commonwealth's Attorney could not unilaterally
withdraw her acceptance of the plea agreement; and (3) assuming
the Commonwealth breached its agreement, defendant is entitled to
specific performance of the agreement.  We hold that the
Commonwealth breached the plea agreement and reverse.

     The defendant and the Commonwealth's Attorney entered into a
plea agreement on March 31, 1995, in accordance with Rule

3A:8(c). It provided that the Commonwealth's Attorney was "desirous of securing information from Sandy relating to activities in Westmoreland County of which Sandy has knowledge . . . ." The agreement stated that Sandy was willing to provide such information by meeting with and fully answering any questions posed to him by the Commonwealth's Attorney. The time and number of the meetings were specified. The agreement provided that after the meetings, if the Commonwealth's Attorney was reasonably satisfied that the information was full and complete, she would amend seven of the indictments involving Kermit Thomas to indictments for petit larceny and she would move the court to "nol pros" or dismiss all of the other indictments. Further, the agreement stated that the Commonwealth's Attorney would recommend to the court that Sandy be fined no more than $500 on each of the seven indictments for which he would be convicted and be sentenced to concurrent six month jail terms on each charge.

On June 5, 1995, several days before the trial was scheduled to commence, the Commonwealth's Attorney advised defense counsel that she thought the defendant had breached the plea agreement by untruthfully furnishing information to her and that she was not going to honor the agreement. For this reason, the trial was postponed.

During the summer months, the parties continued their negotiations in order to resolve the difficulties, but without

success.  On September 8, 1995, the defendant filed a petition alleging that the Commonwealth's Attorney unilaterally breached the plea agreement by refusing to honor it.  He asked that the court specifically enforce the plea agreement.

The procedure for plea agreements is set forth in Rule 3A:8(c).  It provides that the defendant, his or her attorney, and the Commonwealth's attorney may enter into a plea agreement regarding the disposition of the charges.  Pursuant to Rule 3A:8(c)(1), a Commonwealth's attorney may engage in discussions with a view toward reaching an agreement that, upon entry by the defendant of a plea of guilty to a charged offense, or to a lesser or related offense, the Commonwealth's attorney may do any of the following:

> (A)  Move for nolle prosequi or dismissal of other charges;
> (B)  Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding on the court;
> (C)  Agree that a specific sentence is the appropriate disposition of the case.

After a plea agreement is reached by the parties in felony cases, it must be reduced to writing, signed, and presented to the court.  Rule 3A:8(c)(2).  The court may accept or reject such an agreement when it is presented in open court.  Id.; see Wolfe v. Commonwealth, 1 Va. App. 498, 339 S.E.2d 913 (1986).  The Rule specifically provides that the trial court shall not participate in any plea agreement discussions between the parties.  Rule

3A:8(c)(1).

The United States Supreme Court has discussed plea agreements:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.  Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

Santobello v. New York, 404 U.S. 257, 262 (1971).

In United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986), a leading case from the Fourth Circuit[1], the court stated:

> In the process of determining whether disputed plea agreements have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts.  But the courts have recognized that those rules have to be applied to plea agreements with two things in mind which may require their tempering in particular cases.  First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law.  See Mabry v. Johnson, 467 U.S. [504] at 509 [(1984),] (broken government promise that induced guilty plea implicates due process clause because it impairs voluntariness and intelligence of plea).  Second, with respect to federal prosecutions, the courts' concerns

---

[1]Fed. R. Crim. P. 11(e) is substantially identical to Rule 3A:8(c).  See Holler v. Commonwealth, 220 Va. 961, 968, 265 S.E.2d 715, 719 (1980).

> run even wider than protection of the
> defendant's individual constitutional
> rights--to concerns for "honor of the
> government, public confidence in the fair
> administration of justice, and the effective
> administration of justice in a federal scheme
> of government."  United States v. Carter, 454
> F.2d 426, 428 (4th Cir. 1972).

See also United States v. Dixon, 998 F.2d 228 (4th Cir. 1993);

United States v. Garcia, 956 F.2d 41 (4th Cir. 1992); United

States v. Conner, 930 F.2d 1073 (4th Cir.), cert. denied, 502

U.S. 958 (1991).

The Virginia Supreme Court has discussed plea agreements and

said:

> [A] plea bargain agreement was made and
> defendant, who had complied with the
> agreement, was entitled to have the agreement
> strictly complied with by the prosecutor
> until the sentencing process was completed.
> Any deviation from the agreement by the
> prosecutor, whether inadvertent or not,
> should not have been countenanced.  Here the
> defendant promptly elected to withdraw his
> guilty plea entered pursuant to the agreement
> and he should have been permitted to do so.

Johnson v. Commonwealth, 214 Va. 515, 518, 201 S.E.2d 594, 596

(1974) (footnote omitted).  See also Lilly v. Commonwealth, 218

Va. 960, 963, 243 S.E.2d 208, 210 (1978) (where the prosecutor

fails to honor any terms of the plea agreement, a defendant has a

right to withdraw a guilty plea); Jones v. Commonwealth, 217 Va.

248, 257, 227 S.E.2d 701, 707 (1976) (defendant entitled to

specific performance where Commonwealth breached plea agreement);

Jordan v. Commonwealth, 217 Va. 57, 59, 225 S.E.2d 661, 663

(1976) ("The word of the Commonwealth has been given in this

case, and it cannot be abridged, revoked or diluted. The integrity of the Commonwealth itself must be upheld." Specific performance of the plea agreement was decreed.); Calvillo v. Commonwealth, 19 Va. App. 433, 435, 452 S.E.2d 363, 364 (1994) (Commonwealth required to honor agreement and dismiss charge when defendant committed no further violations within a year); Commonwealth v. Sluss, 14 Va. App. 601, 604, 419 S.E.2d 263, 265 (1992) (plea agreements are contractual in nature and subject to principles of contract law).

The petition for specific performance was scheduled for hearing on September 18, 1995. The defendant called as his only witness on the plea agreement issue Gordon A. Wilkins, who was his attorney during the plea agreement negotiations. The Commonwealth did not put on any evidence.

Wilkins testified that he, Sandy and the Commonwealth's Attorney engaged in discussions with a view toward reaching a plea agreement. An agreement was reached, reduced to writing, and signed by the parties.

Under the agreement, the defendant was required to provide certain information to the Commonwealth's Attorney specified in the agreement. Wilkins testified that Sandy was questioned on four occasions by the Commonwealth's Attorney or her representative and that he truthfully answered all questions propounded to him.

According to Wilkins' testimony, the last meeting was held

on May 25, 1995.  That afternoon, he asked the Commonwealth's Attorney whether Sandy had complied with the agreement and reasonably satisfied her that the information furnished was full and complete.  Her answer was that she was leaning toward it, had not made up her mind, and wanted a little more time.

Wilkins contacted the Commonwealth's Attorney the next afternoon.  On this occasion, she stated that she was "reluctantly going along with the plea agreement."  Memorial Day weekend intervened.  The next business day, May 30, 1995, the Commonwealth's Attorney went to Wilkins' office and told him that she had rethought the situation and she was not going to go through with the plea agreement.

On May 31, 1995, Wilkins went to the Commonwealth's Attorney's office and expressed his concern about her repudiation of the agreement when the trial was scheduled on June 8, 1995, and stated to her that he "couldn't allow that to happen." According to Wilkins' testimony, the Commonwealth's Attorney suggested that at the trial on June 8, 1995, they go through with the agreement in its original form, that the case be continued to August, and she make her recommendations at that time.  This deviation was agreed to.  However, on June 5, 1995, Wilkins received a letter from the Commonwealth's Attorney dated May 31, 1995, the same date they agreed upon the modification, which stated:

> This is to confirm that in consideration of Mr. Sandy's frankness in discussions with me and the police regarding short-weighting and

other matters, his willingness to agree to a continuance of this matter, and various mitigating circumstances, if he will plead guilty as agreed in our contract of March 31, 1995, I agree to recommend the amendments, penalties and orders of nolle prosequi as set forth in the agreement. The case will be continued from June 8 to the first court date in August available to both attorneys. . . .

Obviously, if it becomes apparent that Mr. Sandy has told substantial and actual lies regarding any matter, the agreement would have been breached and be void. Mr. Sandy knows (as you and I cannot) whether that is the case.

Wilkins testified that he was "nonplussed" upon receipt of that letter because it did not accurately represent what was said between them on May 31, 1995. The second paragraph of the letter indicated that the investigation would continue. He had understood from her that the investigation had been completed and that she was satisfied with it.

Wilkins testified that he received another faxed letter dated June 5, 1995, from the Commonwealth's Attorney. The letter stated that she had received information that "verifies that Christopher actually lied to me," although the letter did not specify what the lies were or who had verified them. The letter concluded with the statement, "I cannot abide by the agreement."

The facts disclosed in Wilkins' testimony are not in dispute. The Commonwealth did not call a single witness to refute his testimony. Further, the Commonwealth did not put on any evidence to prove that Sandy lied or that he was anything but truthful in the information that he gave at the four sessions.

The Commonwealth's Attorney in argument before the trial court stated that "the defendant breached the agreement by not being truthful." However, no testimony in the record supports this allegation.

At the conclusion of the evidence and argument of counsel, the trial court found:

> Let's cut through this, the Court makes some findings here. The Court finds that there was no agreement between the Commonwealth and the defendant that should be enforced by this Court. The Court finds that the Commonwealth's Attorney had not accepted this, that she had tentatively accepted it. There certainly isn't anything that I find, shown to me this [sic] proposed, and I emphasize the word proposed plea agreement, that said that she was bound to accept this orally at any particular time.
>
> Now, she did indicate that she was accepting it according to the testimony, but I don't think that's any plea agreement until the plea agreement is accepted by the court. Now, there may be an agreement between the parties before that, but I don't find that in this case that there was such an agreement.

The trial court denied the defendant's motion to require the Commonwealth to specifically perform the plea agreement. Later in September, a jury trial was held. The defendant pled not guilty to all charges, and was convicted upon seven felony charges.

We hold that the trial court abused its discretion when it declined to grant the defendant's petition for specific performance of the plea agreement.

The decision whether to grant specific

performance of a contract is a matter submitted to the sound discretion of the trial court. Griscom v. Childress, 183 Va. 42, 47, 31 S.E.2d 309, 312 (1944). Specific performance is an equitable remedy, which may be considered by the trial court where the remedy at law is inadequate and the nature of the contract is such that specific enforcement of it will not result in great practical difficulties. Thompson v. Commonwealth, 197 Va. 208, 212-13, 89 S.E.2d 64, 67 (1955). Although the granting of specific performance is not a matter of absolute right,

> [w]hen the contract sought to be enforced . . . has been proven by competent and satisfactory evidence, and there is nothing to indicate that its enforcement would be inequitable to a defendant, but will work injury and damage to the other party if it should be refused, in the absence of fraud, misapprehension, or mistake, relief will be granted by specific enforcement.

Haythe v. May, 223 Va. 359, 361, 288 S.E.2d 487, 488 (1982).

Chattin v. Chattin, 245 Va. 302, 306-07, 427 S.E.2d 347, 350 (1993).

The defendant proved all of the necessary elements to obtain specific performance of the agreement. Significantly, the evidence proved that a valid contract existed between the parties and that the Commonwealth's Attorney failed to meet her obligations. The defendant offered as an exhibit a copy of the plea agreement entered into between the parties. The written

agreement evinces a clear, complete and distinct meeting of the minds between the parties that was based upon proper consideration and characterized by mutuality of obligation and of remedy. See 17 M.J., Specific Performance, §§ 6-24 (1994). The contract required the defendant to meet with the Commonwealth's Attorney and other officials at specified times and to "fully answer any questions which are posed to him by [the Commonwealth's Attorney]." Upon the condition that the Commonwealth's Attorney "is reasonably satisfied that the information provided by Sandy is full and complete," the Commonwealth's Attorney agreed to move to amend the charges against the defendant and to make a sentence recommendation. After the defendant provided information to the Commonwealth's Attorney, she indicated her satisfaction with the defendant's information by stating that she would "go along with" both the motion to amend the charges and the sentencing recommendation. However, the Commonwealth's Attorney subsequently withdrew her approval and refused to fulfill her contractual obligations.

The record also reflects that the defendant's legal remedies are inadequate and that specific enforcement of the plea agreement is both feasible and fair to both parties. Because the Commonwealth's Attorney failed to comply with the agreement, the defendant was convicted of seven felonies instead of seven misdemeanors, and he received a sentence in excess of that set forth in the agreement. An action at law for damages would be

insufficient to restore the defendant to the position he occupied before the agreement was violated because money damages cannot, among other things, compensate the defendant for the loss of his right to vote. See Va. Const. Art. II, § 1 (stating that convicted felons are unqualified to vote). Moreover, vacating the defendant's convictions and ordering the Commonwealth's Attorney to specifically perform her obligations under the agreement is not impractical. Any other remedy will result in significant injury to appellant.

We disagree with the Commonwealth's argument that the defendant was not entitled to specific performance because his information failed to "reasonably satisf[y]" the Commonwealth's Attorney. The Commonwealth's obligations under the agreement were contingent on the condition subsequent that "[the Commonwealth's Attorney] is reasonably satisfied that the information provided by Sandy is full and complete . . . ." The Commonwealth argues that the defendant breached this condition because the Commonwealth's Attorney discovered that the information given by the defendant was false. However, at the hearing on the defendant's petition for specific performance, the Commonwealth presented no evidence proving that the defendant had given false information. Although "[t]here can be no specific performance of a contract which is subject to a condition unless the condition has been fulfilled," Cushman v. Fitz-Hugh, 199 Va. 234, 240, 98 S.E.2d 706, 709 (1957), "the government [bears] the

'burden of establishing a breach by the defendant [of the . . . agreement] if the agreement is to be considered unenforceable.'" Sluss, 14 Va. App. at 606, 419 S.E.2d at 266 (citation omitted). The Commonwealth failed to satisfy its burden.

Furthermore, we hold that the trial court's assertion that no agreement could exist between the parties until it was approved by the trial court was plainly wrong. Like other contracts in Virginia, a Commonwealth's attorney is contractually bound by an agreement with a defendant from the moment the parties mutually assent by forming the contract. See Richardson v. Richardson, 10 Va. App. 391, 396, 392 S.E.2d 688, 690 (1990). Both the defendant and the Commonwealth's Attorney entered into a valid contract on March 31, 1995, and the Commonwealth's Attorney was bound by its terms from that point forward.[2]

We therefore hold that the defendant is entitled to have his petition for specific performance granted because the Commonwealth breached the plea agreement. We reverse and vacate the convictions and remand for further proceedings consistent with this opinion.

---

[2]The agreement, however, cannot bind the court to accept the terms of the agreement. There is a significant difference, however, between requiring the Commonwealth's attorney to perform his or her obligations under the agreement and requiring the court to act. Here, the defendant simply asks the Commonwealth's Attorney to do what she agreed to do, namely, move to amend the indictments as to certain charges, dismiss the remainder, and make a specific sentencing recommendation. The court's responsibility thereafter depends upon the terms of the agreement. The issue of the court's responsibility is not before us.

<u>Reversed and remanded.</u>