**UNITED STATES of America,**
**Plaintiff,**

v.

**William Earl GIBSON, III, Defendant.**

**No. 4:13–cr–000081–JEG.**

United States District Court,
S.D. Iowa,
Central Division.

---

"race to the courthouse," the first-filed action    preempts a later-filed action).

Craig P. Gaumer, Clifford D. Wendel, U.S. Attorney's Office, Des Moines, IA, for Plaintiff.

Dean A. Stowers, Stowers & Sarcone PLC, West Des Moines, IA, for Defendant.

## ORDER

JAMES E. GRITZNER, Chief Judge.

This matter comes before the Court on Motion to Dismiss Indictment and Motion to Suppress by Defendant William Earl Gibson, III (Gibson). The Government resists. A hearing on the matter was conducted on December 16, 2013.[1] Attorney Dean A. Stowers represented Gibson. Assistant U.S. Attorney Craig P. Gaumer represented the Government. The matter is fully submitted and ready for disposition.

## I. BACKGROUND

In February 2013, Special Agent Phillip Pritchett (Special Agent Pritchett) of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) received information that Gibson was in possession of illegal automatic weapons, which were located at the residence of Gibson's father in Dexter, Iowa. After discussing the case with Assistant U.S. Attorney Cliff Wendel (AUSA Wendel), Special Agent Pritchett applied for and obtained a federal search warrant on February 26, 2013, to seize any illegal weapons located at the father's residence.

After the warrant was approved by Magistrate Judge Ross A. Walters, Special Agent Pritchett and AUSA Wendel had a conversation about the case in AUSA Wendel's office. AUSA Wendel expressed to Special Agent Pritchett that he just wanted to seize the guns and was not interested in prosecuting Gibson based on his lack of criminal history and only possessing a couple of automatic weapons.

On March 6, 2013, Special Agent Pritchett executed the search warrant. Special Agent Pritchett had been informed that Gibson had an anti-government sentiment and could potentially be hostile to law enforcement officers. To diffuse any potential tension that may have occurred when executing the search warrant, Special Agent Pritchett decided to approach Gibson away from his father's residence. Special Agent Pritchett had an officer with the Stuart, Iowa, Police Department place a phone call to Gibson to inform him that some of his mail had been stolen and he needed to come to the Stuart Police Department to retrieve his mail.

As Gibson arrived at the police station and exited his vehicle, Special Agent Pritchett observed Gibson pull a handgun from his waistband and place it under the driver's seat of his vehicle. Special Agent Pritchett, along with other ATF and local law enforcement officers, approached Gibson as he walked toward the police station and informed Gibson that they had a search warrant for Gibson's elderly father's residence. Special Agent Pritchett explained to Gibson that he wanted to make the search as quick as possible and he didn't want to upset Gibson or Gibson's ill father. Described as a tactic to prevent a potential hostile situation, Special Agent Pritchett told Gibson that so long as he was cooperative, the U.S. Attorney's Office was not interested in prosecuting him based on his lack of criminal history and only possessing two machine guns.[2]

---

1. The parties opted to file post-hearing briefs, which were filed simultaneously on January 22, 2014.

2. Special Agent Pritchett testified that during his initial contact with Gibson in the parking lot was the only time he told Gibson that the U.S. Attorney's Office was not interested in prosecuting him. Gibson, however, testified that Special Agent Pritchett made that statement to him "at least twice" during the search. Tr. 73:12–73:13, ECF No. 39.

During the initial confrontation, Gibson proclaimed, "Oh, we're going to do this again," and informed Special Agent Pritchett that the ATF searched Gibson's father's home in the late 1970s and seized a number of machine guns, explosives, and hand grenades. Hrg. Tr. 14:10–14:23, ECF No. 39. Neither Gibson nor his father were prosecuted after the first occasion when the ATF seized weapons from Gibson's father's home, and Gibson didn't expect anything to happen on this occasion. On this record, the Court can conclude Special Agent Pritchett and AUSA Wendel were not aware prior to the execution of the search warrant that ATF agents had previously seized weapons from Gibson.

Special Agent Pritchett and Gibson then went to the residence of Gibson's father and conducted the search. Gibson was read his *Miranda*[3] rights, which Gibson subsequently waived. With cooperation and assistance from Gibson, Special Agent Pritchett was able to locate three machine guns and a short-barreled Uzi—all of which are illegal to possess. The search also revealed several parts kits that can be used to convert semi-automatic firearms into machine guns. Special Agent Pritchett testified that Gibson said he eventually would have used those kits to modify semi-automatic weapons into machine guns.

During the search of his father's residence, Gibson informed Special Agent Pritchett that he also possessed a number of guns and parts kits at his personal residence. Special Agent Pritchett then obtained a signed consent from Gibson to search Gibson's personal residence. Special Agent Pritchett subsequently located and seized a machine gun and numerous parts kits from Gibson's residence.

A few weeks after the search, Gibson called Special Agent Pritchett to inquire about the possibility of regaining possession of the seized firearms. During their conversation, Gibson stated to Special Agent Pritchett, "you kind of gave me the impression last time that [there] might still be a case against me . . . when you told me that I wasn't going to be prosecuted." Tr. of Phone Call, Def. Hrg. Ex. B. Special Agent Pritchett then told Gibson, "The U.S. Attorney's Office wasn't that interested in prosecuting you early on before we knew that you were hit by ATF back in the 70s. That's got them thinking that they may change their mind. I don't know that that will happen, but that's a possibility." *Id.*

On July 23, 2013, the Grand Jury issued a one-count Indictment charging Gibson with being in possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. Gibson filed a Motion to Dismiss Indictment and a Motion to Suppress on November 8, 2013. The Government resists the Motion to Dismiss but concedes some issues raised in the Motion to Suppress.

## II. DISCUSSION

### A. Motion to Dismiss Indictment

Gibson seeks to dismiss the Indictment arguing that the Government breached a binding agreement not to prosecute. Gibson contends the Government offered a non-prosecution agreement when Special Agent Pritchett told Gibson that the U.S. Attorney's Office would not prosecute him for possessing machine guns if he cooperated during the search. Gibson argues that Special Agent Pritchett was authorized to enter into the alleged non-prosecution agreement because prior to executing the search warrant, AUSA Wendel dis-

---

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.   1602, 16 L.Ed.2d 694 (1966).

closed to Special Agent Pritchett that he did not intend to prosecute Gibson. Gibson asserts that he fully complied with the terms of the alleged agreement by cooperating with law enforcement during the search, waiving his *Miranda* rights, admitting to possessing the illegal firearms, and consenting to a subsequent search of his personal residence where an additional illegal firearm and parts kits were seized.

The Government argues that it is not bound by Special Agent Pritchett's statement because Special Agent Pritchett did not have the authority to make a non-prosecution agreement on behalf of the U.S. Attorney's Office. The Government avers that federal agents do not have authority to offer immunity, and the decision to prosecute rests solely with the U.S. Attorney's Office. The Government maintains that AUSA Wendel's statement to Special Agent Pritchett was merely an "off-the-cuff comment" that did not discuss the grant of immunity or authorize Special Agent Pritchett to convey the message to Gibson. Gov't Post Hearing Br. 5, ECF No. 41. The Government contends that Special Agent Pritchett made the statement to Gibson as a tactical decision, without any actual authority from the U.S. Attorney's Office, to help ease any potential hostile behavior that may have arisen during the execution of the search warrant.

█ "Cooperation-immunity agreements are contractual in nature and subject to contract law standards." *United States v. Johnson,* 861 F.2d 510, 512 (8th Cir.1988) (citing *United States v. Brown,* 801 F.2d 352, 354 (8th Cir.1986)). "With an agreement not to prosecute, parties agree that the defendant's cooperation is sufficient consideration for the government's promise of immunity." *Id.* (citing *United States v. McGovern,* 822 F.2d 739, 745 (8th Cir.1987)). As a general rule, promises made by the Government pursuant to a non-prosecution agreement must be upheld, and the Government will only be excused of its performance by a material breach. *United States v. Hyles,* 521 F.3d 946, 952 (8th Cir.2008). However, in order for a non-prosecution agreement to be enforced, the agent must have the authority to make the promise, and the defendant must detrimentally rely on the promise. *United States v. Flemmi,* 225 F.3d 78, 84 (1st Cir.2000) ("[A] defendant who seeks specifically to enforce a promise, whether contained in a plea agreement or a freestanding cooperation agreement, must show both that the promisor had actual authority to make the particular promise and that he (the defendant) detrimentally relied on it. If either part of this showing fails, the promise is unenforceable." (internal citations omitted)).

█ The first issue, then, is whether Special Agent Pritchett was authorized to enter into an immunity agreement on behalf of the U.S. Attorney's Office. *See Margalli–Olvera v. INS,* 43 F.3d 345, 353 (8th Cir.1994) ("The rule requiring compliance by the government with promises made during plea bargaining and analogous contexts generally requires that the agent be authorized to make the promise" (quoting *Thomas v. INS,* 35 F.3d 1332, 1338 (9th Cir.1994))). It is well established that, absent express authority from the U.S. Attorney's Office, federal agents, such as ATF agents, do not have actual authority to bind the Government to non-prosecution agreements as the decision to prosecute rests solely at the discretion of the U.S. Attorney's Office. *See Flemmi,* 225 F.3d at 91 (holding that "FBI agents lack authority to tender a binding promise of use immunity to an informant"); *United States v. Cordova–Perez,* 65 F.3d 1552, 1554 (9th Cir.1995) (holding an INS agent did not have authority to bind the U.S.

Attorney to a non-prosecution agreement), *overruled on other grounds by In re Ellis,* 356 F.3d 1198, 1205 (9th Cir.2004) (en banc); *United States v. Fuzer,* 18 F.3d 517, 520–21 (7th Cir.1994) (holding ATF agents were not authorized to bind the U.S. Attorney to a non-prosecution agreement); *United States v. Streebing,* 987 F.2d 368, 372–73 (6th Cir.1993) (holding an FBI agent lacked authority to make a promise not to prosecute).

Gibson concedes that federal agents, in their position alone, do not have authority to enter into non-prosecution agreements on behalf of the U.S. Attorney's Office. Gibson argues, however, that Special Agent Pritchett was granted authority through his agency relationship with AUSA Wendel because prior to executing the search warrant, AUSA Wendel actually disclosed to Special Agent Pritchett his intention of not prosecuting Gibson. Gibson argues that the discussion between AUSA Wendel and Special Agent Pritchett provided Special Agent Pritchett with actual authority to enter into a non-prosecution agreement with Gibson.

██ "Normally, authorization must be in the form of actual authority; the doctrines of estoppel and apparent authority usually do not apply to bind the government." *Margalli–Olvera,* 43 F.3d at 353 (citing *Thomas,* 35 F.3d at 1338). "Actual authority may be either express or implied...." *Id.* Express authority "means actual authority that a principal has stated in very specific or detailed language." Restatement (Third) Agency § 2.01 cmt. b (2013). It is undisputed that AUSA Wendel is statutorily authorized to make all decisions related to prosecuting offenses against the United States—including granting a non-prosecution agreement. *See, e.g., United States v. Lua,* 990 F.Supp. 704, 708 (N.D.Iowa 1998) ("FBI agents are not authorized to bind the Unit-

ed States Attorney's Office nor to offer prosecutorial immunity to individuals. Rather, Assistant[ ] United States Attorney[s] in the United States Attorney's Office are charged with offering and making immunity deals which bind the United States in criminal prosecutions."). Although AUSA Wendel disclosed to Special Agent Pritchett his stance on prosecuting prior to the execution of the search warrant, AUSA Wendel never expressly told Special Agent Pritchett to grant Gibson prosecutorial immunity, nor did AUSA Wendel ever specifically discuss the possibility of a non-prosecution agreement. As such, AUSA Wendel's statement to Special Agent Pritchett did not expressly authorize Special Agent Pritchett to bind the U.S. Attorney's Office to a non-prosecution agreement.

Absent express authority from AUSA Wendel, Gibson contends that Special Agent Pritchett had implied authority to grant prosecutorial immunity due to the nature of his relationship with AUSA Wendel. Implied authority grants an agent the authority "to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." Restatement (Third) Agency § 2.01 cmt. b (2013). Special Agent Pritchett, in his capacity as an ATF agent, is tasked with the duty of investigating criminal violations and is responsible for making all of the tactical decisions necessary to carry out an investigation. Although Special Agent Pritchett testified that he has worked with AUSA Wendel "quite a bit," there is no evidence that AUSA Wendel has ever authorized Special Agent Pritchett to make non-prosecution agreements on behalf of the U.S. Attorney's Office. Hrg. Tr. 24:21–24:22, ECF No. 39. Special Agent Pritchett testified that, in his capacity as an ATF Special Agent, he does not have

the authority to grant prosecutorial immunity and he has never granted prosecutorial immunity throughout his career. Special Agent Pritchett testified that he told Gibson that the U.S. Attorney's Office was not interested in prosecuting him merely as a tactical attempt to diffuse what he believed to be a potentially hostile situation. Accordingly, because Special Agent Pritchett knew that he was not authorized to grant prosecutorial immunity in his position as an ATF agent, had never granted prosecutorial immunity in his tenure as an ATF agent, and made the statement to Gibson as a tactical decision, the Court determines that Special Agent Pritchett did not have implied authority from AUSA Wendel to enter into a non-prosecution agreement on behalf of the U.S. Attorney's Office.

█ Gibson also argues that the Indictment should be dismissed because the Grand Jury issued the Indictment after being presented with inadmissible evidence that derived as a result of Gibson's cooperation in the investigation. Despite the potential inadmissibility at trial of the evidence presented to the Grand Jury, a grand jury indictment tainted by unconstitutionally obtained evidence will not be dismissed on that basis. *See United States v. Levine,* 700 F.2d 1176, 1179 (8th Cir.1983) (citations omitted) (holding a grand jury may indict on evidence that is inadmissible at trial, even evidence obtained through an unlawful search and seizure).

Accordingly, the Court determines that Special Agent Pritchett was not authorized to enter into a non-prosecution agreement, and thereby his statement to Gibson concerning prosecutorial immunity cannot be enforced. There is also no basis to dismiss the Indictment based on potentially inadmissible evidence presented before the Grand Jury. As such, the Court must deny Gibson's Motion to Dismiss.

### B. Motion to Suppress

Recognizing the agents had a warrant to search the residence of Gibson's father, the evidence found at that location is not the subject of the Motion to Suppress. Rather, Gibson seeks to suppress all evidence obtained by the Government that was derived from his statements made during the execution of the search warrant, his waiver of his *Miranda* rights, and the consent to search his personal residence. Gibson contends that his statements and actions were involuntary because he disclosed information, waived his rights, and consented to the search of his personal residence in reliance that the U.S. Attorney's Office would not prosecute him so long as he cooperated.

The Court need not pursue the legal analysis on this issue because the Government concedes Gibson was potentially unduly influenced to cooperate with authorities under these unusual circumstances, which would undermine the voluntary nature of his post-*Miranda* statements and consent to the additional search of Gibson's own residence. Therefore, the Government has advised the Court they are not prosecuting Gibson on the basis of his statements, or the evidence found after his consent and the additional search at his personal residence, and would not utilize that evidence. Based upon that assurance from the Government, the Court finds the Motion to Suppress is moot. On that record, the Motion to Suppress will be denied.

### III. CONCLUSION

For the reasons stated, Gibson's Motion to Dismiss, ECF No. 23, and Motion to Suppress, ECF No. 24, must be **denied.**

**IT IS SO ORDERED.**