**UNITED STATES of America,
Appellant,**

v.

**Glenn Duane BROWN, Appellee.**

**No. 85–2264.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1986.

Decided Sept. 18, 1986.

Rehearing and Rehearing En Banc
Denied Oct. 23, 1986.

Robert J. Govar, Asst. U.S. Atty., Little Rock, Ark., for appellant.

John Lloyd Johnson, Jr., Little Rock, Ark., for appellee.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and HANSON *, Senior District Judge.

McMILLIAN, Circuit Judge.

The United States appeals from a final order entered in the District Court for the Eastern District of Arkansas dismissing an indictment charging Glenn Duane Brown with attempting to possess with intent to distribute cocaine in violation of 21 U.S.C.

---

* The Honorable William C. Hanson, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

§§ 841(a)(1), 846. For reversal the government argues the district court erred in dismissing the indictment on the basis of the government's breach of a cooperation or nonprosecution agreement. For the reasons discussed below, we reverse and remand with directions.

During the summer of 1983 a drug dealer named Gucciardo agreed to cooperate with the government's undercover investigations of illegal drug transactions in Arkansas. In October 1983 Gucciardo and Brown negotiated a sale of approximately one pound of cocaine. During two of their meetings, Brown was videotaped handling the purchase money and discussing other drug deals. The government did not permit Gucciardo to complete the cocaine transaction and did not arrest Brown at that time because the government feared that such an arrest would expose Gucciardo's undercover role.

In January 1985 Gucciardo's undercover investigations ended and the U.S. Attorney for the Eastern District of Arkansas invited Brown and his attorney to review the government's evidence against Brown. On January 18, 1985, Brown, his attorney and an Assistant U.S. Attorney signed a letter agreement including the following terms (emphasis added):

1. Upon the acceptance of a proffer, as defined herein, the United States Attorney for the Eastern District of Arkansas will consider a nonprosecution agreement concerning [Glenn] Duane Brown for the offense of attempted purchase of cocaine on October 13, 1983. The acceptance or rejection of the proffer is within the sole discretion of the United States Attorney for the Eastern District of Arkansas.

2. Glenn Duane Brown agrees to give his full cooperation, as defined herein, to the United States concerning all information that he has regarding the possession, distribution and/or importation of controlled substances of which he has knowledge or in which he was involved.

3. The United States further agrees that the statements made in reliance upon this agreement will not be used against [Glenn] Duane Brown except in a prosecution for perjury or false statement.

4. Upon acceptance of the proffer, it is further understood that the United States Attorney for the Eastern District of Arkansas will bring no further charges against Glenn Duane Brown for any acts or conduct arising out of any event described in paragraph 3 above should all conditions described herein be faithfully performed by Glenn Duane Brown.

5. The term "full cooperation," as used herein, is defined to mean: (1) truthful disclosure of all information and knowledge concerning the possession, distribution and/or importation of controlled substances; (2) truthful testimony before any grand or petit jury as a witness for the United States when deemed appropriate by the United States or any federal prosecutor; and (3) participation in ongoing investigations.

. . . .

7. It is further understood that the United States will not be bound by the agreements herein should the defendant do any of the following: (1) *commit any future crimes punishable by a term of imprisonment exceeding one year;* (2) violate any conditions of probation or parole later imposed; (3) fail to adhere, in any manner, to the terms and conditions of this agreement.

The government by letter dated the same day accepted Brown's "proffer" of cooperation. The government then "debriefed" Brown extensively his past drug deals, including the October 1983 attempt to purchase cocaine.

In April 1985 the government received information from an informant that on two occasions, on or about April 3 and 5, 1985, Brown had gone to Louisiana and purchased marijuana. The government investigated this information; government agents observed Brown collect two payments from the informant for the marijuana. When the government confronted

Brown with this information, Brown denied buying or distributing marijuana but admitted purchasing a small amount of cocaine which he used himself. The government decided that Brown had breached the cooperation agreement by buying marijuana and cocaine and by falsely denying his involvement in those transactions when questioned by the government. In May 1985 the government obtained an indictment charging Brown with the October 1983 attempt to possess with intent to distribute cocaine.

In June 1985 Brown filed a motion to dismiss the indictment, arguing that the government could not prosecute him for the October 1983 offense because of the cooperation agreement. The district court heard oral arguments on the motion to dismiss the indictment. Because the district court viewed the motion as presenting only a question of law, no testimony or exhibits were introduced at the hearing. The government admitted that Brown had cooperated with the government drug investigations but argued that Brown could not claim the benefit of the cooperation agreement because he had breached the agreement by committing additional crimes and by making false statements about those additional crimes to government agents. Defense counsel argued that Brown denied purchasing any marijuana or making any false statements but admitted purchasing a small amount of cocaine only in connection with a government investigation.

The district court assumed that the government could prove its allegations of breach and held that because the government had received the benefits of Brown's cooperation pursuant to the cooperation agreement, the government could not prosecute Brown for the October 1983 offense. The district court then dismissed the indictment. This appeal followed.

The government argues that the cooperation agreement should not be enforced because Brown breached it by committing additional crimes and by making false statements about those crimes. Brown argues that because he has fully cooperated with the government's drug investigations, the government should not be permitted to "rescind" the cooperation agreement and prosecute him for the October 1983 offense. Brown argues that the government's remedy for any breach of the cooperation agreement is to prosecute him for making a false statement. Brown also argues that the April 1985 offenses are "extraneous" to the cooperation agreement and, although perhaps independently punishable, should not affect the enforceability of the agreement.

■■■ "Generally speaking, a cooperation-immunity agreement is contractual in nature and subject to contract law standards. ... The language of the contract is to be read as a whole and given a reasonable interpretation, not an interpretation that would produce absurd results." *United States v. Irvine*, 756 F.2d 708, 710 (9th Cir.1985) (per curiam) (citations omitted); *accord United States v. Baldacchino*, 762 F.2d 170, 179 (1st Cir.1985); *United States v. Carrillo*, 709 F.2d 35, 36 (9th Cir.1983); *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir.), *cert. denied*, 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981). Cooperation agreements are analogous to plea agreements. *See United States v. Carrillo*, 709 F.2d at 36; *cf. Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971) (plea bargain); *United States v. Garcia*, 519 F.2d 1343, 1345 (9th Cir.1975) (deferred prosecution agreement). "It is clear that a defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement." *United States v. Calabrese*, 645 F.2d at 1390 (citations omitted).

For purposes of analysis, we will assume, as did the district court, that the government can prove its allegations that Brown breached the cooperation agreement by committing additional crimes and by making false statements about those crimes. We will further accept the government's admission that, with the exception of the additional crimes and the false state-

ments about those crimes, Brown otherwise fully performed his obligations under the cooperation agreement.

■ We hold the district court erred in deciding that, as a matter of law, the cooperation agreement was enforceable against the government even though Brown had breached the cooperation agreement. It is not disputed that the cooperation agreement contained express conditions requiring Brown not to commit future crimes punishable by imprisonment of one year or more and to "fully cooperate" by truthfully disclosing any knowledge or information about drug violations. It is also not disputed, given our assumptions for purposes of appeal, that Brown failed to comply with both of these conditions and thus breached the cooperation agreement. As a result of Brown's breach, the government was no longer bound by the cooperation agreement and, unless barred by the applicable statute of limitations, could prosecute Brown for the October 1983 offense. *See United States v. Irvine*, 756 F.2d at 710 (additional crime); *cf. United States v. Baldacchino*, 762 F.2d at 179 (failure to comply with plea agreement); *United States v. Calabrese*, 645 F.2d at 1390 (failure to comply with plea agreement).

We must remand the case to the district court for further proceedings consistent with this opinion. "The question of a defendant's breach is not an issue to be finally determined unilaterally by the government." *United States v. Calabrese*, 645 F.2d at 1390 (citation omitted). Because Brown raised a factual dispute on the issue of breach, on remand the district court should hold an evidentiary hearing and determine whether Brown breached the cooperation agreement. "[T]he government has the burden of establishing a breach by the defendant if the agreement is to be considered unenforceable." *Id.*

If the district court determines that Brown did not breach the cooperation agreement, fundamental fairness requires the government to uphold its part of the agreement and the district court may enforce the agreement by dismissing the indictment. If the district court determines that Brown did breach the cooperation agreement, the government is not bound by the cooperation agreement and may prosecute Brown for the October 1983 offense. However, in prosecuting the October 1983 offense, the government may not use any information obtained, directly or indirectly, from Brown as a result of the cooperation agreement.

Accordingly, the order of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

HANSON, Senior District Judge, dissenting.

I must respectfully dissent. The Court today construes this as a simple breach of contract action, but fails to address the more grave concerns with regard to the enforceability of the contract. The contract term at issue would allow the government to void the contract at any point in the future if Brown would commit a crime punishable by a term in excess of one year. The agreement makes no mention of the applicable statute of limitations for the crime he committed in 1983. As a result of the ambiguity in the contract created by the government, I believe Brown would not be bound. At the time he signed the contract, Brown found himself in a totally subservient position to the government due to the fact that he was under the stress of the charge. It would appear to me that the government used its superior bargaining position to almost blackmail Brown into signing a contract committing him to being an informant for life. This term, it seems to me, would amount to an unconscionable bargain and therefore is void as against public policy. Furthermore, because Brown has fully performed the obligations he agreed to and because the government has received all the reasonable emoluments of its bargain, it cannot now force him into trial on the 1983 charges it agreed not to prosecute.

I find even more disturbing this Court's failure to consider the serious repercus-

sions that may ensue if the government is allowed to prosecute Brown. Armed with all the information it has from the confession, the government is asked not to rely directly or indirectly on that information. Even if I were not troubled by discerning how the court below will be able to ascertain when the government *indirectly* uses this information, I would question whether this Court's decision forfeits Brown's right against self incrimination. I have no doubt, in spite of the government's assurances, that the information he has given will benefit the government in cross-examining witnesses and anticipating defenses. The end result is, even though Brown had performed his part of the bargain, that the government will be able to prosecute him with the very information he was assured would not be used against him.

The more just result in this case would be for the government to pursue its other remedies—prosecution for perjury or false statement (as provided in paragraph 2 of the agreement) and prosecution on the 1985 marijuana charges. I would therefore affirm the district court.