**Salem**

COMMONWEALTH OF VIRGINIA

v.

SCOTT RAY SLUSS

No. 0017-92-3

Decided June 8, 1992

COUNSEL

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General; Leah A. Darron, Assistant Attorney General, on brief), for appellant.

David L. Scyphers (Johnson, Scyphers & Austin, on brief), for appellee.

Opinion

**COLEMAN, J.**—The Commonwealth appeals, pursuant to Code § 19.2-398, from a trial court order that suppressed statements made by Scott Ray Sluss to agents of the Commonwealth and the evidence derived from those statements. The basis for the trial judge's ruling was that the statements were involuntary because they were induced by a promise of immunity from the Commonwealth's attorney that was later retracted in violation of Sluss's fifth amendment privilege against self-incrimination. We affirm the decision of the trial judge, but for a reason different than his finding that the defendant's statements were not voluntary. We hold that under the terms of the agreement which Sluss had with the Commonwealth, and pursuant to the due process clause of the fourteenth amendment, his statements could not be used against him unless he breached certain conditions of the agreement. We find that the evidence fails to show that Sluss breached the cooperation/immunity contract and, even if as the Commonwealth contends it had the right unilaterally to cancel the contract, Sluss, who had not breached the agreement, was entitled to the benefit of his bargain prior to the Commonwealth canceling the agreement.

A sovereign may override a person's fifth amendment privilege against self-incrimination and thereby compel the person to testify if the government grants to the person immunity that is coextensive with the scope of the constitutional privilege. *Kastigar v. United States*, 406 U.S. 441, 449 (1972). In order for the grant of immunity to be coextensive with the fifth amendment protection, the cloak of immunity must provide that the individual's compelled testimony may not be used directly or indirectly against him. *Id.* at 453. Federal prosecutors, with court approval, are authorized by statute to grant a witness immunity and thereby compel the witness to testify over his assertion of the fifth amendment privilege. *See* 18 U.S.C. § 6002 *et seq.* Virginia, however, has no analogous statute by which prosecutors, even with judicial approval, may constitutionally compel a witness to testify. *But see, e.g.*, Code §§ 18.2-262 and 18.2-437. We held in *Gosling v. Commonwealth*, 14 Va. App. 158, 415 S.E.2d 870 (1992), that because Code § 19.2-270 confers only use immunity, and does not confer derivative use immunity, the statute may not be invoked to override a person's assertion of the fifth amendment privilege

against self-incrimination.

In addition to the statutory grant of immunity, federal prosecutors may enter into cooperation/immunity agreements whereby the government promises an individual immunity from prosecution, or from use of, and/or derivative use of, statements the witness makes to the government. These agreements are usually made in consideration for the individual's cooperation in providing information concerning criminal activity. *See, e.g., United States v. Brown,* 801 F.2d 352 (8th Cir. 1986); *United States v. Irvine,* 756 F.2d ·708 (9th Cir. 1985).

■ Although no Virginia statutory or case decision has expressly authorized the use of cooperation/immunity agreements, such cooperation/immunity agreements contravene no constitutional or statutory provision. Such agreements are contractual in nature and, thus, are subject to principles of contract law. *See Brown,* 801 F.2d at 354; *Irvine,* 756 F.2d at 710. *Cf. Holler v. Commonwealth,* 220 Va. 961, 265 S.E.2d 715 (1980) (where plea induced by promises by Commonwealth, the promises must be fulfilled); *Jones v. Commonwealth,* 217 Va. 248, 227 S.E.2d 701 (1976) (Court held defendant entitled to specific performance where Commonwealth breached plea agreement); *Jordan v. Commonwealth,* 217 Va. 57, 225 S.E.2d 661 (1976). Furthermore, these agreements, which are analogous to plea agreements, *see Brown,* 801 F.2d at 354, "must be attended by constitutional safeguards to ensure [that] a defendant receives the performance he is due." *United States v. Britt,* 917 F.2d 353, 359 (8th Cir. 1990) (citing *Santobello v. New York,* 404 U.S. 257, 262 (1971)), *cert. denied,* 498 U.S. 1090 (1991). Thus, unlike commercial contracts, cooperation/immunity agreements are subject to due process safeguards which require that the government strictly adhere to the terms of its agreement. *United States v. Pelletier,* 898 F.2d 297, 303 (2d Cir. 1990). Thus, to allow the government to receive the benefit of its bargain without providing the reciprocal benefit contracted for by the defendant would do more than violate the private contractual rights of the parties — it would offend all notions of fairness in the related criminal proceedings, which are protected by constitutional due process.

The pertinent terms of the cooperation/immunity agreement were that Sluss was to provide law enforcement authorities a complete and accurate account "concerning *any* and *all* drug activity

of which [Sluss had] knowledge or in which [he had] participated." In exchange for Sluss's cooperation, the Commonwealth promised that "[a]ny information, except information about crimes of violence, given by [Sluss] will not be used against [him] unless and until [he] take[s] the witness stand in any proceeding and give[s] testimony, or otherwise, give[s] statements that are contrary to what [Sluss had] related to the government attorney or attorneys or law enforcement officers." The agreement provided that should Sluss fail to adhere to his obligation under the contract, the government's attorney reserved the right to cancel or terminate the agreement and "such information as [Sluss had] related may then be used against [him] without limitation." In addition, the agreement provided that if the government attorneys or law enforcement officers determined "any instance where [Sluss]. . . omitted any information concerning drugs or drug related matters, or [he gave] false or misleading information" or refused to cooperate, the government attorney had the right to terminate the cooperation/immunity agreement. The agreement provided that the determination whether Sluss omitted any information or gave false or misleading information was within the sole discretion of the government attorney or attorneys.

On Sluss's motion to suppress his statements, the trial judge ruled that because Sluss's statements to agents of the Commonwealth were induced by a promise of immunity, they were given in violation of Sluss's fifth amendment rights and must be suppressed. Although the trial court made no express finding that Sluss's statements were not voluntary, apparently the basis for finding that Sluss's fifth amendment privilege against self-incrimination was violated was that the promise of immunity overcame his will and rendered the statements involuntary. While the Commonwealth has the burden of showing that statements given by a suspect in response to a custodial interrogation are voluntary, on this record, we find nothing to indicate otherwise. Consequently, we hold that the trial court erroneously concluded that Sluss involuntarily made the statements to agents of the Commonwealth.

Nevertheless, where the trial court reaches the correct ruling for the wrong reason, we may affirm the ruling on appeal, provided the issue was before the trial court and the facts were resolved by the judge. See *Thims v. Commonwealth*, 218 Va. 85, 93, 235 S.E.2d 443, 447 (1977). This rule may not be used, how-

ever, where the correct reason for affirming the trial court was not raised in any manner at trial. *Eason v. Eason*, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963); *Driscoll v. Commonwealth*, 14 Va. App. 449, 452, 417 S.E.2d 312, 313-14 (1992).

At trial, the Commonwealth's attorney acknowledged that he had entered into an agreement with Sluss. He also represented to the court that Sluss had breached the agreement by not dealing truthfully with agents of the Commonwealth. Consequently, the issue of whether Sluss had breached the cooperation/immunity agreement was raised at the suppression hearing, and the facts were fully developed and resolved there. The only question remaining is to construe the contract, which an appellate court is as well positioned to do as the trial court. *See Fry v. Schwarting*, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987).

■ Notwithstanding that the trial court erred in finding that Sluss involuntarily made the contested statements, the court correctly ruled that the agreement granted Sluss "immunity." The Commonwealth promised that "[a]ny information, except information about crimes of violence, given by [Sluss] will not be used against [him]." Consequently, the government bore the "burden of establishing a breach by the defendant [of the cooperation/immunity agreement] if the agreement is to be considered unenforceable." *United States v. Johnson*, 861 F.2d 510, 513 (8th Cir. 1988) (quoting *Brown*, 801 F.2d at 355). In fact, if Sluss did not breach the cooperation/immunity agreement, due process requires that the government provide Sluss with the benefit of his bargain. *See Pelletier*, 898 F.2d at 302.

Generally, the government may not unilaterally determine whether a defendant has breached a cooperation/immunity agreement in order to retract the prophylactic cloak of immunity granted by the agreement. *Brown*, 801 F.2d at 355. Moreover, where the government breaches the terms of a cooperation/immunity agreement, the appropriate remedy is left to the discretion of the trial court. *Johnson*, 861 F.2d at 512. While dismissal of an indictment may be an appropriate remedy for a government's breach of such an agreement in certain circumstances, suppression of the evidence obtained as a result of the agreement may also be an appropriate remedy. *Id.*

█ Accepting the Commonwealth's contention that, under the terms of the agreement with Sluss, the prosecuting attorney had the right to cancel or terminate the agreement if in his "sole discretion" he determined "any instance where [Sluss] . . . omitted any information concerning drugs, . . . or [gave] . . . false or misleading information. . .[or] refuse[d] to cooperate," nevertheless, the right to cancel the agreement did not render unenforceable the covenant of the agreement that "[a]ny information . . . given . . . will not be used against [Sluss] *unless and until [he] take[s] the witness stand in any proceeding and give[s] testimony, or otherwise give[s] statements, that are contrary to what [he]. . . related to the government attorneys or law enforcement officers.*" (emphasis added). This provision of the agreement "immunized" Sluss from having his statements used against him for any purpose unless and until he breached his agreement by giving testimony or statements "contrary to what [he had] related to the government." The Commonwealth has not shown that Sluss violated either of those conditions so as to justify the withdrawal of the promised "immunity." *See Johnson*, 861 F.2d at 513. While the Commonwealth's attorney represented to the court that Sluss had breached the agreement, he did not appear as a witness to testify at the hearing. Representations by counsel are not evidence that a court may properly consider. *Graves v. Graves*, 4 Va. App. 326, 332, 357 S.E.2d 554, 558 (1987). No evidence suggests that Sluss testified or gave statements contrary to what he told the police officers. Accordingly, Sluss did not breach the agreement. Since he did not breach the contract, he is entitled to the benefit of his agreement. His statements must be suppressed because under the terms of the agreement, they cannot be used against him unless and until he testifies or otherwise gives contrary statements, neither of which condition has been proven to have occurred. The trial court's ruling that granted Sluss's motion to suppress the evidence was correct based on the provisions in the agreement. Consequently, because the Commonwealth failed to prove that Sluss breached the agreement, he was entitled to the contractual immunity. Based on that immunity, the trial court did not abuse its discretion in ordering suppression of the statements Sluss made to agents of the Commonwealth. *See Johnson*, 861 F.2d at 512.

For the foregoing reason, the order of the trial court is affirmed.

*Affirmed.*

Koontz, C.J., and Moon, J., concurred.