J-S90038-16

2016 PA Super 296

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JONATHAN RITZ, | |
| Appellee | No. 862 EDA 2016 |

Appeal from the Order February 16, 2016
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000171-2005

BEFORE: OTT, J., SOLANO, J. AND JENKINS, J.

OPINION BY JENKINS, J.:                                    **FILED DECEMBER 21, 2016**

The Commonwealth appeals from an order granting Jonathan Ritz's motion to enforce the condition in his guilty plea agreement requiring him to register as a sex offender for ten years. The Commonwealth contends that the Sex Offender Registration and Notification Act ("SORNA"),[1] which the legislature enacted six years after Ritz's guilty plea agreement, requires Ritz to register as a sex offender for the rest of his life.

Based on our Supreme Court's recent decision in ***Commonwealth v. Martinez***, 147 A.3d 517 (Pa.2016), and authorities cited therein, we agree with the trial court that under contract principles, Ritz's agreement is binding and enforceable, and he is only required to register for ten years. We also address an issue that the majority in ***Martinez*** declined to examine: even if

_____

[1] 42 Pa.C.S. §§ 9799.10 – 9799.41.

Ritz has a binding agreement with the Commonwealth, do the Contract Clauses of the United States and Pennsylvania Constitutions entitle the legislature to modify the terms of Ritz's plea agreement through SORNA? Guided by Chief Justice Saylor's concurring opinion in **Martinez**, we hold that SORNA runs afoul of Ritz's fundamental due process right to enforce the terms of his plea agreement. Because SORNA violates due process, it also fails to satisfy the United States and Pennsylvania Contract Clauses.

Accordingly, we affirm the trial court's order.

On March 14, 2005, Ritz was charged with two counts of indecent assault of a person less than 13 years of age, endangering the welfare of children, corruption of minors and unlawful contact with a minor.[2] Under Megan's Law, 18 Pa.C.S. 9795.1 (repealed), the sexual offender registration law then in effect, each offense carried a ten year registration period for first time offenders such as Ritz. No offense carried a lifetime registration period.

On June 15, 2005, Ritz entered into a negotiated plea in which he agreed to plead guilty to one count of indecent assault in return for the Commonwealth's agreement to *nolle prosse* the remaining charges. There

---

[2] 18 Pa.C.S. §§ 3126(a)(7), 4304(a), 6301(a)(1), and 6318(a)(1), respectively. The bills of information alleged that on or about June 1, 2004, Ritz had a minor child put lotion on his penis and watch him masturbate. Later on the same date, Ritz had the minor child straddle his legs as he rubbed his penis against her.

- 2 -

was no mention during the guilty plea hearing about the length of time that Ritz had to register as a sex offender.

On September 15, 2005, the trial court sentenced Ritz to three years' probation. During Ritz's sentencing hearing, the assistant district attorney asserted that Ritz's guilty plea to indecent assault carried a mandatory registration period of ten years: "Your Honor, *this does require as part of a plea agreement 10 year Megan's Law registration* and the notification that needs to be read into the record." N.T., 9/15/05, at 2 (emphasis added). The court stated in its sentencing order: "[Ritz] is … subject to the ten [] year [registration] requirement[] under Megan's Law pursuant to 18 Pa.C.S. [§] 9795.1."

In September 2008, Ritz completed his three-year term of probation with no violations.

The legislature enacted SORNA on December 20, 2011, and SORNA became effective on December 20, 2012. SORNA "added crimes to the list defined as sexually violent offenses, and established a three-tiered system for classifying such offenses and their corresponding registration periods." *Commonwealth v. Farabaugh*, 128 A.3d 1191, 1192 (Pa.2015). Tier I offenses require registration for 15 years; Tier II offenses mandate 25 years of registration; and Tier III offenses obligate an offender to register for his or her lifetime. 42 Pa.C.S. § 9799.15(a)(1), (2), and (3), respectively. Indecent assault is a Tier III offense. 42 Pa.C.S. § 9799.14(d)(8). Individuals who registered as sex offenders prior to SORNA's effective date,

but who had not completed their registration periods by that date, were required to register under SORNA "as provided in section 9799.15." 42 Pa.C.S. § 9799.13(3)(i).

As of SORNA's effective date, Ritz had not completed his ten-year registration period under Megan's Law. Consequently, if SORNA were to apply, it would obligate Ritz to register "as provided in section 9799.15," i.e., as a sex offender for life, instead of for the ten years that the parties agreed upon at sentencing, as explained below.

On December 3, 2015, the Pennsylvania State Police notified Ritz that he was required to register as a sex offender for life. Ritz promptly filed a Petition To Enforce Plea Agreement To Avoid Additional Sex Offender Registration contending that his guilty plea agreement limited his registration period to ten years.

On February 16, 2016, the trial court ordered that Ritz was "subject to the 10 year Megan's Law registration in effect at the time of his plea" and "not subject to the new registration requirements under the SORNA statute." The Commonwealth filed a timely appeal, and both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises five issues in this appeal, which we have re-ordered for the sake of disposition:

> 1. Did the trial court err in finding that [Ritz] presented sufficient evidence that he specifically bargained for only a 10 year registration period, when there was absolutely no mention of it in any guilty plea colloquy, nor at the time of the plea hearing?

2.   Did the trial court err in finding that simply informing a defendant of his statutory duty to register under Megan's Law, when such notification was required by statute, transformed that notice into a specifically bargained for term of a plea agreement?

3.   Did the trial court err in finding that the specific length of the registration, which is a collateral consequence, was within the control of the District Attorney to negotiate away?

4.   Did the trial court err in modifying the length of registration when it is specifically prohibited [from doing so] by 42 Pa.C.S. § 9799.20?

5.   Did the trial court err in finding that the Commonwealth of Pennsylvania cannot modify the term of an existing contract as a legitimate exercise of the police power of this state?

Brief of Commonwealth, at 4.

We address the Commonwealth's first four arguments together, because they boil down to the same issue: whether the order limiting Ritz's registration period to ten years violates the plain language of SORNA.  This is a question of law for which our standard of review is *de novo* and our scope of review is plenary.  **Commonwealth v. Crawley**, 924 A.2d 612, 614 (Pa.2007).  Based on the majority opinion in **Martinez**, we conclude that the order is valid and enforceable.

In **Martinez**, the trial court granted the petitions of three individuals[3] to limit their registration periods as sex offenders to the time periods in effect under Megan's Law at the time of their guilty plea agreements.  One

_____

[3] Our Supreme Court later consolidated the Commonwealth's appeals relating to these individuals under the caption "**Commonwealth v. Martinez**".

petitioner, Wayne Shower, had been charged with indecent assault under 18 Pa.C.S. § 3126(a)(7), the same offense charged against Ritz in the present case, and aggravated indecent assault. Shower pled guilty to indecent assault in exchange for the Commonwealth's promise to withdraw the aggravated indecent assault charge and to recommend a sentence of 11½ - 23 months' imprisonment.

The trial court accepted the plea agreement and imposed sentence on June 12, 2006, a date when Megan's law was in effect. Under Megan's Law, Shower's conviction for indecent assault required him to register as a sexual offender for ten years. 42 Pa.C.S. § 9795.1(a)(1) (expired). The aggravated indecent assault charge withdrawn by the Commonwealth would have subjected Shower to lifetime registration under Megan's Law. 42 Pa.C.S. § 9795.1(b)(2) (expired).

During the plea agreement hearing, the only mention of Shower's registration requirement was a comment by defense counsel: "Section 9795.1 [of Megan's Law] does seem to indicate that a 10-year registration would be required relating to indecent assault where the offense is a misdemeanor of the first degree." N.T., 3/6/06, at 5.[4] There was *no*

_____

[4] We have located the transcript from Shower's guilty plea hearing in the Commonwealth's reproduced record in *Martinez*, and we attach the transcript as an appendix to this opinion. The *Martinez* majority does not recite from the guilty plea transcript, but it does discuss the guilty plea proceedings in some detail. Therefore, we think it safe to assume that the guilty plea transcript was in the certified record in that appeal.

*mention* that Shower's motive for pleading guilty to indecent assault was to avoid a lifetime registration term required for an aggravated indecent assault conviction.

Seven years passed. In 2013, shortly after SORNA went into effect, Shower filed a petition to enforce his plea agreement, arguing that his plea agreement rested upon an "understanding and agreement" with the Commonwealth that he only had to register as a sexual offender for ten years under Megan's Law. The court held a hearing during which Shower testified that he entered the plea agreement with the "underst[anding]" that part of the agreement required him to register as a sexual offender for only ten years. Shower further testified that the main reason that he entered into the agreement with the Commonwealth was to avoid the lifetime registration requirement Megan's Law attached to an aggravated indecent assault conviction, *i.e.*, the charge that the Commonwealth withdrew as part of the plea agreement. ***Martinez***, 147 A.3d at 523-24. But while Shower chose to explain his motives seven years after his guilty plea, *nobody said during the guilty plea hearing itself* that Shower's motive for pleading guilty to indecent assault was to avoid a lifetime registration term.

The trial court granted Shower's petition. It explained that general principles of contract law entitled Shower to enforce his bargain with the Commonwealth restricting his registration period to ten years. The Commonwealth appealed to this Court, which affirmed on the basis of ***Commonwealth v. Hainesworth***, 82 A.3d 444 (Pa.Super.2013) (*en*

*banc*).[5]  The Commonwealth filed a petition for allowance of appeal, and the Supreme Court granted *allocatur*.

In the Supreme Court, the petitioners, including Shower, argued that ***Hainesworth*** was correctly decided, while the Commonwealth insisted that the plea agreements were subject to modification through SORNA.  On September 28, 2016, the Supreme Court affirmed.  Citing ***Hainesworth*** with approval, the majority opinion in ***Martinez*** held that basic contract principles entitled Shower to enforce the Commonwealth's agreement in his guilty plea to limit his registration period to ten years:

_____

[5] The defendant in ***Hainesworth*** was charged with statutory sexual assault, aggravated indecent assault, indecent assault and criminal use of a communication facility.  The defendant entered a negotiated plea of guilty to statutory sexual assault, indecent assault, and criminal use of a communication facility.  The Commonwealth agreed to withdraw the aggravated indecent assault charge, which carried a lifetime registration requirement under Megan's Law.  The Commonwealth stated during the defendant's guilty plea hearing that the offenses to which the defendant pled guilty were "not Megan's Law."  *Nobody expressly stated during the guilty plea hearing* that the parties structured the plea agreement in order for the defendant to *avoid lifetime registration under Megan's Law*.

One week before SORNA's effective date, the defendant filed a petition seeking termination of his supervision in contemplation of the registration requirement that would be imposed if he remained on probation on SORNA's effective date.  The trial court denied the petition to terminate Hainesworth's supervision but entered an order stating that Hainesworth was not subject to the registration requirements of SORNA.  This Court affirmed, stating: "It is unambiguous from the record that both parties to this appeal, and the trial court, understood that a registration requirement was not included as a term of Hainesworth's plea agreement."  ***Id***., 82 A.3d at 448.

[T]he **Hainesworth** court accurately described the critical role that plea agreements play in the criminal justice system. In fact, courts have long recognized that plea negotiations and agreements are essential components of the criminal justice system. **See**, **e.g.**, **Santobello [v. New York]**, 404 U.S. [257], 260 [(1971)] (explaining that '[t]he disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice'). In this Commonwealth, we look upon the practice of plea bargaining with favor. **Commonwealth v. Zuber**, 353 A.2d 441, [443 (Pa.1976)].

We acknowledge that the analogy of a plea agreement as a contract is not a perfect one. For instance, unlike a typical contract, a plea agreement does not become binding on the parties upon their consent to terms; rather, a plea agreement is not valid and binding until it is evaluated and accepted by a third party, *i.e.*, a trial court. **See** Pa.R.Crim.P. 590(A)(3) (stating that a judge may refuse to accept a plea of guilty or *nolo contendere* and that the judge shall not accept the plea unless the judge determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered).

Nonetheless, as the **Hainesworth** court recognized, plea agreements clearly are contractual in nature. **See Puckett v. United States**, 556 U.S. 129, 137 (2009) (stating that, '[a]lthough the analogy may not hold in all respects, plea bargains are essentially contracts')….

[T]he **Santobello** Court instructed that, 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' **Santobello**, 404 U.S. at 262. Consistent with **Santobello**, this Court has held that, when a trial court has accepted a plea agreement entered into by the Commonwealth and a defendant, the prosecutor is duty bound to fulfill the promises made in exchange for the defendant's guilty plea. **See Zuber**, 353 A.2d at 444 (holding that the prosecutor has an affirmative duty to honor all promises made in exchange for a defendant's plea) (citing, *inter alia*, **Santobello**) … 'Our courts have demanded strict compliance with that duty in order to avoid any possible perversion of the plea bargaining system, evidencing the concern that a defendant

might be coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees attendant the right to trial by jury.' *Zuber*, 353 A.2d at 444. Consequently, in this Commonwealth, when trial courts accept plea agreements, the convicted criminals, like [Shower] in this case, are entitled to the benefit of their bargains. *Id*.

*Id*., 147 A.3d at 531-32.

The majority concluded:

When a question arises as to whether a convicted criminal is entitled to specific performance of a term of his plea agreement, the focus is not on the nature of the term, *e.g.*, whether the term addressed is a collateral consequence of the defendant's conviction. Rather, quite simply, the convicted criminal is entitled to the benefit of his bargain through specific performance of the terms of the plea agreement. Santobello, 404 U.S. at 262 ... Thus, a court must determine whether an alleged term is part of the parties' plea agreement. If the answer to that inquiry is affirmative, then the convicted criminal is entitled to specific performance of the term ...

Regarding Shower's case, in concluding that the record demonstrated the nature of the parties' plea agreement, the Superior Court accurately recounted the discussion that took place at Shower's plea colloquy … That discussion included Shower's counsel stating that Shower would be subject to ten years of registration under Megan's Law … Thus, the Superior Court held that the record demonstrated that Shower was entitled to the benefit of his bargain - ten years of registering as a sexual offender. The Commonwealth fails to convince us that the court erred in this regard.

*Id*. at 532-33.[6]

_____

[6] Chief Justice Saylor and Justice Wecht filed concurring opinions. We discuss Chief Justice Saylor's concurring opinion on pages 19-20, *infra*, in the course of analyzing the Commonwealth's Contract Clause argument.

This case is the same in all material respects as Shower's case in *Martinez* and *Hainesworth*. Like Shower and Hainesworth, Ritz pled guilty to an offense in exchange for the Commonwealth's agreement to withdraw one or more other charges. In each case, the parties agreed on the record as to the length, if any, of the defendant's sexual offender registration period. In *Hainesworth*, the prosecutor said that the defendant's sentences are "not Megan's law"; in *Martinez*, Shower's attorney stated, without objection by the Commonwealth, that Shower had a 10 year registration period; and in the present case, the prosecutor expressly agreed that a ten-year registration period was "part of [its] plea agreement" with Ritz. In each case, the agreement was valid under the sexual offender law then in effect, Megan's Law. In particular, at the time of Ritz's plea agreement in 2005, the maximum allowable registration period for his offense under Megan's Law was ten years – the period of time he agreed to accept. For these reasons, the trial court correctly held that Ritz and the Commonwealth entered into a binding contract to make ten years the applicable registration period. *Martinez*, 147 A.3d at 531 ("plea agreements clearly are contractual in nature"). Ritz is entitled to enforce this agreement to receive the benefit of his bargain. *Id*.

The proceedings in *Martinez* and *Hainesworth* are noteworthy for one additional reason. In neither case did the defendant *state on the record* his motives for entering the plea agreement. Specifically, neither defendant

explained on the record that he entered his plea agreement to avoid lifetime registration under Megan's Law. Despite this omission, the **Martinez** and **Hainesworth** courts held that each plea agreement was enforceable. The lesson that we learn, therefore, is that the defendant need not explain his motives for entering a guilty plea in order to enforce its terms. All that is essential is that the terms themselves are clear and constitute valid consideration for the agreement, as they did in **Martinez** and **Hainesworth**. In the present case, Ritz did not explain on the record why he decided to plead guilty, but under **Martinez** and **Hainesworth**, he did not need to do so.

Finally, even though Ritz did not need to explain his motivations on the record, a reasonable person in his position would have had precisely the same motivation as Shower did in **Martinez** -- to avoid lifetime registration as a sex offender. Ritz was charged with three offenses that required registration under Megan's Law: two counts of indecent assault of a person less than 13 years of age and one count of unlawful contact with a minor. 18 Pa.C.S. § 9795.1(a)(1). Had Ritz been convicted of more than one of these offenses, he would have been subject to lifetime registration under Megan's Law. 18 Pa.C.S. § 9795.1(b)(1) ("the following individuals shall be subject to lifetime registration:... An individual with two or more convictions of any of the offenses set forth in subsection (a)"). By pleading guilty to only one of these offenses and obtaining the *nolle prosse* of the remaining

charges under his plea agreement, Ritz limited his registration period to ten years and eliminated any possibility of lifetime registration (as well as any possibility of conviction and sentencing on the *nolle prossed* charges).

As in **Martinez** and **Hainesworth**, the terms that Ritz and the Commonwealth affirmatively placed on the record provided ample consideration to both parties and created a binding and enforceable agreement between Ritz and the Commonwealth.

The Commonwealth insists that its promise of a ten-year registration period is not binding because it occurred during Ritz's sentencing hearing instead of his guilty plea hearing. We find this distinction irrelevant. At sentencing, the Commonwealth agreed *on the record* to make the ten-year registration "*part of [Ritz's] plea agreement*." The fact that the Commonwealth agreed to this term at sentencing does not make this agreement any less binding than if it occurred at Ritz's guilty plea hearing. To conclude otherwise would undermine confidence in the integrity of the plea bargaining system, the very danger the majority opinion in **Martinez** warns us to avoid. **See id**., 147 A.3d at 532 ("our courts have demanded strict compliance with [the] duty [to honor all promises made in exchange for a defendant's plea] in order to avoid any possible perversion of the plea bargaining system").

The Commonwealth claims that it lacked the authority to "negotiate away" the length of Ritz's registration period at sentencing. This statement

is inaccurate, if not disingenuous. A party cannot "negotiate away" a right it never had in the first place. At the time of Ritz's sentencing in 2005, Megan's Law limited the registration period for indecent assault to ten years. SORNA's amendment to lifetime registration did not become effective until seven years after sentencing. Since the Commonwealth had no right to demand lifetime registration at sentencing, it obviously did not "negotiate away" lifetime registration. In truth, the Commonwealth obtained every minute of the registration period which the law required at that time for Ritz's crime of conviction.

Equally inaccurate is the Commonwealth's assertion that the trial court "modif[ied]" Ritz's registration period in violation of SORNA. The court "modified" nothing -- to the contrary, it *denied the Commonwealth's attempt to modify* Ritz's 2005 plea bargain by changing Ritz's registration period from ten years to his entire lifetime. This was the correct decision under **Martinez**. **Id**., 147 A.3d at 527 (quoting, *inter alia*, **Hainesworth**) ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled").

Under **Martinez**, a deal is a deal. The Commonwealth agreed on the record at Ritz's sentencing in 2005 that his registration period under Megan's Law was ten years. Although the Commonwealth might not like the deal it made in 2005, it cannot abrogate it now. As another panel of this Court

- 14 -

recently stated: "We refuse to allow Appellant's plea bargain to be reformed with the addition of new conditions which did not exist when he entered the plea agreement. To do otherwise would play 'gotcha' with a revered and favored method of resolving criminal cases." *Commonwealth v. Farabaugh*, 136 A.3d 995, 1003 (Pa.Super.2016).

Having resolved the contract-based issues raised by the Commonwealth, we turn to a constitutional issue asserted in the Commonwealth's fifth and final argument. The Commonwealth contends that even if Ritz's plea agreement is enforceable under contract law principles, the Contract Clauses of the United States and Pennsylvania Constitution entitle the legislature to modify the plea agreement via enactment of SORNA. SORNA, the Commonwealth claims, overrides the plea agreement as a "valid exercise of [the Commonwealth's] police powers" under the Contract Clauses.

The majority in *Martinez* refrained from deciding whether the Contract Clauses permit the legislature to pass legislation that modifies or overrides the defendant's plea agreement.[7] *Id*., 147 A.3d at 524-25, 529-

_____

[7] The majority elected to decide the case on common law contract principles alone, because the trial court and Superior Court only applied contract law principles in deciding the case, the parties provided adequate argument on this non-constitutional subject, and the Commonwealth never raised the constitutional Contract Clause issue in the trial court. *Id*. at 524-25, 529-30.

- 15 -

30. Accordingly, we now perform that task, and we conclude that the Contract Clause argument lacks merit.

The United States Constitution states that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts...." U.S. Const. art. I, § 10. The Pennsylvania Constitution provides similar protection. Pa. Const. art. I, § 17 ("No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed").

In general, the United States and Pennsylvania Contract Clauses prohibit the legislature from enacting laws that retroactively impair contract rights. *First Nat. Bank of Pennsylvania v. Flanagan*, 528 A.2d 134, 137 (Pa.1987) ("[t]he [C]ontracts [C]lauses… protect contracts freely arrived at by the parties to them from subsequent legislative impairment or abridgment"). Although the United States Contract Clause speaks in absolute terms, it is not "the Draconian provision that its words might seem to imply." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240 (1978). This provision "does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public," even though contracts previously entered into may be affected. *Id.* at 241. Stated another way, this provision "does not trump the police power of a state to protect the general welfare of its citizens." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d

362, 367 (2d Cir. 2006). The same principle applies to Pennsylvania's Contract Clause, because "the test for unconstitutional impairment of contract is the same under both constitutions." *South Union Township v. Commonwealth*, 839 A.2d 1179, 1188 n. 14 (Pa.Cmwlth.2003) (citing *Parsonese v. Midland National Insurance Company*, 706 A.2d 814 (Pa.1998)).

To determine whether legislation satisfies the United States and Pennsylvania Contract Clauses, we apply a three-part test articulated in *Energy Reserves Group, Inc. v. Kansas Power and Light*, 459 U.S. 400 (1983):

> The threshold inquiry is to determine whether the state statute in reality has operated to substantially impair a contractual relationship. [*Energy Reserves Group*, 459 U.S.] at 411 []. Should it be determined that a substantial impairment has occurred, the state must set forth a legitimate and significant public purpose. *Id.* at 412-13 []. Once that purpose is identified, the final inquiry concerns whether the adjustment of contractual rights is reasonable and of a nature appropriate to the public purpose justifying the legislation's adoption; however, if the state is not a contracting party, deference is given to the state's enunciated purpose. *Id.*

*Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 614 A.2d 1086, 1094 n. 4 (Pa.1992) (citing *Energy Reserves Group*).

In this case, the Commonwealth concedes, and we agree, that SORNA substantially impairs Ritz's rights under the plea agreement by extending his period of registration from ten years to his entire life. Brief For Commonwealth, at 30.

With regard to the second prong, the Commonwealth asserts, and we agree, that the legislature enacted SORNA for a legitimate and significant public purpose, namely "to further protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of sexual offenders, specifically as that regulation relates to registration of sexual offenders…"  42 Pa.C.S. § 9799.11(b)(1) (declaration of General Assembly's policy).

We turn to the third prong of the *Energy Reserves Group* test, which inquires whether the impairment is both necessary and reasonable to meet the purpose advanced by the legislature.  *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 22, (1977) ("legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption"); *United Steel Paper and Forestry Rubber Manufacturing Allied Industrial and Service Workers International Union AFL–CIO–CLC v. Government of Virgin Islands*, -- F.3d --, 2016 WL 6695785, *10 (3d Cir., 11/15/16) ("any impairment must be both necessary *and* reasonable … [to] survive Contract Clause scrutiny") (emphasis in original).  Significantly, when the State itself is a contracting party, "complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake."  *U.S. Trust Co.*, 431 U.S. at 26.  If we afforded complete deference to the State in such a case, the Contract Clause

probably "would provide no protection at all." *Id.* For this reason, when a State is a contracting party, its "legislative judgment is subject to stricter scrutiny than when the legislation affects only private contracts." *Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1249 (3d Cir. 1987).

When a statute is unreasonable, the court need not address whether the statute is unnecessary. *United Steel Paper*, 2016 WL at 6695785, *8 ("we need not decide today whether [the Virgin Islands Economic Stability Act] was necessary because … we conclude it was unreasonable, which is alone sufficient to render it improper under the Contract Clause").

Chief Justice Saylor's concurring opinion in *Martinez* correctly reasons that SORNA violates the due process rights of individuals who registered for shorter time periods under Megan's Law. Because SORNA runs afoul of due process, SORNA obviously is unreasonable.

Chief Justice Saylor began by observing:

The Fourteenth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution, which have been interpreted as generally coextensive, guarantee the protections of due process. *Commonwealth v. Sims*, 919 A.2d 931, 941 n.6 (Pa.2007). The Court has previously related that '[t]he due process inquiry, in its most general form, entails an assessment as to whether the challenged proceeding or conduct offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental and that defines the community's sense of fair play and decency.' *Commonwealth v. Kratsas*, 764 A.2d 20, 27 (Pa.2001).

*Martinez*, 147 A.3d at 534. SORNA, the Chief Justice continued, violates due process by permitting the Commonwealth to circumvent solemn and

- 19 -

binding promises it made in plea agreements to limit sex offenders' registration periods under Megan's Law:

> Plea bargaining's role in our justice system, combined with the defendant's exchanged waiver of constitutional rights, mandates consideration of fundamental fairness and attendant due process protections. *See State v. Blackwell*, 522 S.E.2d 313, 315 (N.C. Ct. App. 1999) *remanded on other grounds*, 538 S.E.2d 929 (N.C. 2000) (*per curiam*) ('By pleading guilty, a defendant waives many constitutional rights, not the least of which is his right to a jury trial. No other right of the individual has been so zealously guarded over the years and so deeply embedded in our system of jurisprudence .... As such, due process mandates strict adherence to any plea agreement').

> It seems evident from this Court's and other jurisdictions' precedents that the enforcement of plea bargains is rooted in fundamental fairness. *See, e.g., Commonwealth v. Sluss*, 419 S.E.2d 263, 265 (Va. Ct. App. 1992) ('[T]o allow the government to receive the benefit of its bargain without providing the reciprocal benefit contracted for by the defendant would do more than violate the private contractual rights of the parties—it would offend all notions of fairness in the related criminal proceedings, which are protected by constitutional due process.'). Accordingly, since the parties stipulated in these cases that the registration conditions were express terms of appellees' plea agreements, I believe appellees are entitled to the benefit for which they bargained as a matter of due process.

*Id*. at 534-35. "The view that plea bargains must be enforced pursuant to due process principles," the Chief Justice added, "appears to garner support among many state and federal jurisdictions." *Id*. at 535 n. 1 (citing ten federal and state decisions).

We agree with Chief Justice Saylor's logic, and we hold that SORNA violates Ritz's federal and state due process rights by depriving him of the benefit of his plea bargain with the Commonwealth. Because SORNA is

invalid as a matter of due process, it also is unreasonable, and therefore invalid, under the United States and Pennsylvania Contract Clauses. In everyday terms, SORNA is unreasonable because it robs Peter to pay Paul -- it plunders Ritz's due process rights in its effort to enhance public safety. We have no doubt that the legislature had the best of intentions in enacting SORNA, but its motives do not excuse its incursion on Ritz's constitutional rights.

Because we find SORNA unreasonable, we need not evaluate whether it is necessary. **United Steel Paper**, 2016 WL at 6695785, *8. We reject the Commonwealth's argument that SORNA is a valid modification to Ritz's plea agreement under the United States and Pennsylvania Contract Clauses.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/21/2016</u>