COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Athey and Senior Judge Haley
Argued at Fredericksburg, Virginia

PUBLISHED

JOHN CARLOS BARDALES

OPINION BY
v.        Record No. 0455-19-4        JUDGE RANDOLPH A. BEALES
APRIL 7, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Daniel E. Ortiz, Judge[1]

Andrew W. Lindsey (Price Benowtiz, LLP, on brief), for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General (Mark R. Herring, Attorney General, on brief), for appellee.


John Carlos Bardales entered a plea agreement in which he pled guilty to a robbery he committed while he was a minor.  He was sentenced to "the Department of Juvenile Justice for a determinate period as a serious juvenile offender pursuant to § 16.1-285.1 . . . not to exceed his twenty-first (21st) birthday" and "[f]ollowing his release from the Department of Juvenile Justice, . . . a sentence as an adult" in the Department of Corrections (DOC) for five years.  After the Department of Juvenile Justice (DJJ) requested that the circuit court review Bardales's placement with DJJ, the circuit court on February 19, 2019 suspended his five-year incarceration with DOC on the condition that he successfully complete the special DOC Youthful Offender Program pursuant to Code § 19.2-311 and Code § 53.1-63.  Bardales now challenges the circuit court's final order, claiming that it violated his plea agreement.

---

[1] Judge Jan L. Brodie presided over all the proceedings in the case except for the final proceeding.  Judge Daniel E. Ortiz presided over that hearing and entered the final order on February 19, 2019.

## I. BACKGROUND[2]

Bardales was indicted[3] in February 2017 for a robbery he committed on October 24, 2016, when he was seventeen years old. On February 27, 2017, while still seventeen, Bardales signed a plea agreement. Paragraph 7 of the plea agreement stated in full:

> The following is submitted: The defendant will plead guilty to the charge, be found guilty and will be sentenced accordingly. The only agreement with regards to sentencing is that in exchange for the defendant's plea, the Commonwealth agrees that the defendant shall receive a blended sentence that would allow him to serve the portion of any active sentence in the custody of the Department of Juvenile Justice to the extent that he is eligible for such placement, however, such an agreement does not limit this court's ability to sentence the defendant within the full range of punishment. The Commonwealth nolle prossed related and unrelated charges at preliminary hearing.

At the February 27, 2017 hearing on Bardales's guilty plea, Bardales was represented by Joseph Dailey. After conducting a plea colloquy, the circuit court accepted Bardales's guilty plea. Based on counsel for appellant's request (and the Commonwealth's concurrence) that Bardales be screened for the Youthful Offender Program, the circuit court ordered a presentence investigation and screening for the Youthful Offender Program and scheduled the sentencing hearing for June 9, 2017.

---

[2] Part of the record in this case was sealed. In order to appropriately address the assignment of error raised by appellant, this opinion includes some limited portions of the record that were sealed. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[3] The Fairfax County Juvenile and Domestic Relations District Court entered an order dated January 19, 2017 stating, "The Commonwealth timely filed a notice of intent to try defendant as an adult. At the hearing, defendant confirmed that he was aware of his right to a preliminary hearing on this charge, but that he would waive that hearing." The order certified the case to the grand jury of the circuit court.

At the June 9, 2017 sentencing hearing, Bardales's counsel requested "some sort of blended sentence to DJJ." Counsel stated, "John [Bardales] is asking for the court for an order for him to be committed to the Department of Juvenile Justice until he's 21, with the remaining amount of time suspended -- or the adult time suspended which allows him to be on probation." After the circuit court confirmed that Bardales did not desire to participate in the DOC Youthful Offender Program, the court sentenced him to DJJ as a serious juvenile offender, followed by five years of incarceration in DOC.

A year later, in a memorandum dated June 29, 2018, DJJ notified the circuit court that "Bardales is having difficulty adjusting to the expectations of the Virginia Department of Juvenile Justice (DJJ) and is struggling with adhering to daily operational rules within the Bon Air Juvenile Correctional facility to the degree that he is affecting the wellbeing of other residents and staff."[4] The memorandum from DJJ requested the circuit court to review its order regarding Bardales before the two-year automatic review would occur in June 2019.[5] The court scheduled a hearing for the matter in September 2018. On September 11, 2018, the court entered an order granting Bardales's motion to replace his original counsel with new counsel, who then sought to argue a motion to reconsider Bardales's sentence.[6]

---

[4] A June 6, 2018 DJJ progress report shows that Bardales "accrued several infractions and two criminal charges since starting his sentence June 26, 2017," including a conviction for misdemeanor possession of a controlled substance and a pending charge of assault on a law enforcement officer.

[5] Pursuant to Code § 16.1-285.1(F), DJJ is to petition the court that committed the juvenile to DJJ for a review of the continued commitment of the juvenile at least sixty days prior to the second anniversary of his commitment to DJJ, but may also petition the court for an earlier review.

[6] Code § 16.1-285.1(E) provides that "[t]he court which commits the juvenile to the Department under this section shall have *continuing jurisdiction* over the juvenile throughout his commitment." (Emphasis added.)

- 3 -

At the September 14, 2018 hearing, Bardales's new counsel argued that "if [Bardales] serves an active portion outside of DJJ, that is functionally a rejection of his plea agreement. His plea agreement says any active portion has to be in DJJ." The circuit court disagreed with Bardales's position, noting, "This plea agreement only says that he would serve a portion of the active sentence in the custody of DJJ. It doesn't say that his whole sentence would be in DJJ." When the circuit court stated that it would place Bardales to serve the remainder of his sentence in DOC, counsel stated, "For the record, I'm objecting that the plea has been violated, but if we're shifting to what's next, we would ask for what everyone said he should have gotten in the first place, which is [the] youthful offender [program]." After hearing that the Commonwealth did not object to Bardales's placement in the Youthful Offender Program, the circuit court "continu[ed] this matter to December 13[, 2018] to determine his eligibility for the youthful offender program as an alternative to the DJJ and short of sending him just over to DOC."

At the conclusion of the December 13, 2018 hearing, the circuit court entered an order placing Bardales "into the Youthful Offender Program, if eligible" and once again continued the matter for a review hearing to determine his eligibility for that program.

At that February 8, 2019 hearing, the judge noted that, after conducting an assessment, the Youthful Offender Program staff deemed Bardales "eligible [but] not suitable" for the Youthful Offender Program. Despite the staff's assessment, the circuit court entered a final order on February 19, 2019 which suspended the five years of the sentence to DOC imposed on June 9, 2017, conditioned upon Bardales's remand to the custody of DOC "for an indeterminate period of time not to exceed four years" for his successful completion of DOC's Youthful Offender Program, pursuant to Code § 19.2-311. Bardales timely filed an appeal of this order.

On appeal, Bardales argues, "The trial court erred by sentencing Appellant to active incarceration outside the Department of Juvenile Justice, in violation of Appellant's accepted plea agreement."

## II. ANALYSIS

A circuit court's interpretation of a plea agreement is governed by the law of contracts and is a matter of law subject to *de novo* review. Hood v. Commonwealth, 269 Va. 176, 181 (2005); Commonwealth v. Sluss, 14 Va. App. 601, 604 (1992). These agreements "are subject to due process safeguards which require that the government strictly adhere to the terms of its agreement." Sluss, 14 Va. App. at 604. To the extent that factual findings of the circuit court are part of the analysis, we cannot disturb factual findings made by the circuit court unless they are plainly wrong. Hood, 269 Va. at 181; Naulty v. Commonwealth, 2 Va. App. 523, 527 (1986).

The question before us then is simply one of interpretation of the plea agreement. Bardales argues, "The plain language of th[e] agreement specified that any active incarceration portion of the blended sentence would be served in the DJJ." He also argues that "the trial court's ultimate sentencing of Appellant to additional active incarceration outside of DJJ violated the terms of the plea agreement." In his argument, Bardales focuses on the words "the" and "any" from one sentence in paragraph 7 of the plea agreement as follows:

> The only agreement with regards to sentencing is that in exchange for the defendant's plea, the Commonwealth agrees that the defendant shall receive a blended sentence that would allow him to serve *the* portion of *any* active sentence in the custody of the Department of Juvenile Justice to the extent that he is eligible for such placement, however, such an agreement does not limit this court's ability to sentence the defendant within the full range of punishment.

(Emphasis added.) Focusing on those words, Bardales argues that *any* actual incarceration outside of DJJ violates his plea agreement.

However, Bardales's argument does not take into account the entirety of paragraph 7, or even the entirety of the sentence on which he focuses. The sentence at issue reads,

> The only agreement with regards to sentencing is that in exchange for the defendant's plea, the Commonwealth agrees that the defendant shall receive a *blended sentence* that would allow him to serve *the portion* of any active sentence in the custody of the Department of Juvenile Justice *to the extent that he is eligible for such placement* . . . .

(Emphasis added.) Importantly, the rest of the sentence says, "however, such an agreement does not limit this court's ability to sentence the defendant within the full range of punishment." In addition, paragraph 4 of the plea agreement states, in part, "My attorney has advised me that the punishment which the law provides is as follows: commitment to the Department of Juvenile Justice, or confinement in a state correctional facility for life or any term not less than five years, or a *blended juvenile and adult sentence*." (Emphasis added.) Because the plea agreement did not limit the circuit court's ability to sentence Bardales for up to a confinement for life, as Bardales acknowledged in the plea agreement, the court logically must be able to place him in confinement somewhere other than DJJ, which is limited by statute to confining juveniles only until they turn twenty-one years of age (see Code § 16.1-285.1(C)). The plea agreement itself anticipates that Bardales could be in DOC – through use of the language "a blended juvenile and adult sentence."

Bardales's eligibility for placement in DJJ includes his age (a juvenile may not be committed to DJJ beyond his twenty-first birthday, see Code § 16.1-285.1(C)), but is not limited to his age, see, e.g., Code § 16.1-285.1(D) (providing that DJJ's placement decisions "shall be made based on the availability of treatment programs at the facility; the level of security at the facility; the offense for which the juvenile has been committed; and the welfare, age and gender of the juvenile"). Here, DJJ sent a memorandum to the circuit court requesting a review because Bardales was "affecting the wellbeing of other residents and staff." In addition, a DJJ progress

report showed that Bardales "accrued several infractions and two criminal charges," including a conviction for possession of a controlled substance and a pending charge of assault on a law enforcement officer while in DJJ. The circuit court, after reviewing the information presented to it, determined that Bardales was no longer eligible to be placed in DJJ because of his conduct. At the September 14, 2018 hearing, the circuit court stated, "[R]ight now [Bardales has] thrown away his chances at DJJ. They want him out of there." At the December 13, 2018 hearing, the court stated, "You've [Bardales] had a horrendous history over in DJJ. I've never seen anything like this, someone that just can't look and do what's requested, required of them. . . . This is serious stuff." And at the February 8, 2019 hearing, the circuit court stated, when considering whether to place Bardales in the Youthful Offender Program, "My bigger concern is he's picking up assault charges in DJJ." Each of these statements by the circuit court is a finding of fact by the court. Given the record before us, we cannot say that the circuit court was plainly wrong in those findings of fact.

In short, the plea agreement provided that Bardales would "receive a blended sentence that would allow him to serve the portion of any active sentence in the custody of the Department of Juvenile Justice *to the extent that he is eligible for such placement . . . .*" (Emphasis added.) After Bardales had spent just over a year in the custody of DJJ – based on the request of DJJ to review the matter and after conducting multiple hearings – the circuit court removed Bardales from DJJ and placed him in the DOC Youthful Offender Program. Based upon the evidence in the record, we cannot say that the circuit court erred.

Furthermore, Bardales's argued interpretation of the plea agreement would ultimately lead to an absurd result. He argues that, once he turns twenty-one (and thus has aged out of DJJ) he could be placed on probation, but he could not be committed to active incarceration in DOC or even its Youthful Offender Program. If Bardales could never be sent to DOC before or after

he turns twenty-one, there would be virtually no enforcement mechanism for a failure on his part to comply with probation. In addition, if Bardales's position were correct, regardless of how bad Bardales's behavior and actions were while in the DJJ facility, the circuit court would actually have no recourse or enforcement mechanism for Bardales outside of DJJ at its disposal. Taking Bardales's argument to its logical conclusion demonstrates the absurdity of his position.

For all of these reasons, the circuit court did not err in its interpretation of the plea agreement and in its final order remanding Bardales to the custody of DOC for its Youthful Offender Program.

### III. CONCLUSION

Contrary to Bardales's argument that his plea agreement prevented any incarceration outside of DJJ, his plea agreement explicitly provided that Bardales was to receive "a *blended* sentence that would allow him to serve *the portion of any active sentence* in the custody of the Department of Juvenile Justice *to the extent that he is eligible for such placement . . . .*" (Emphasis added.) The plea agreement also explicitly stated that "such an agreement does not limit this court's ability to sentence the defendant within the full range of punishment."

After receiving a request from DJJ to review Bardales's placement there because of Bardales's actions and behavior while in DJJ, the circuit court held hearings and ultimately determined that Bardales should be removed from DJJ and placed in the DOC Youthful Offender Program. Because the circuit court did not err in its interpretation of the plea agreement, it did not err in its order placing Bardales in the custody of DOC to complete the Youthful Offender Program. For all of these reasons, we affirm the decision of the circuit court.

Affirmed.